ST. LOUIS AIR CARGO SERVICES, INC., Appellant,

v.

CITY OF ST. LOUIS, Respondent.

No. 69098.

Missouri Court of Appeals, Eastern District, Division Four.

July 16, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1996.

Application to Transfer Denied Oct. 22, 1996.

Tyrone A. Taborn, City Counselor, and Edward J. Hanlon, Deputy City Counselor, St. Louis, for Respondent.

SIMON, Judge.

St. Louis Air Cargo Services, Inc. (SLACS), appeals the granting of summary judgment in favor of City of St. Louis (City), in an action for breach of warranty and breach of contract, involving the construction and lease of an air cargo facility at Lambert St. Louis International Airport (Lambert).

In its first point on appeal, SLACS contends that the trial court erred in granting summary judgment in favor of City because: 1) the undisputed facts establish, as a matter of law, that SLACS has a cause of action against City for breach of warranty; and 2) the written lease between the parties is ambiguous and the undisputed facts do not entitle City to judgment as a matter of law. We reverse.

When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376[1–3] (Mo.banc 1993). However, summary judgment is proper where the movant demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 380–381. If the movant meets this burden, the non-movant may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial. *Id.*; Rule 74.04(e).

The record reveals that City is the owner and operator of Lambert. From mid–1986 until April, 1987, City, by and through its Director of Airports, Colonel Leonard L. Griggs (Griggs) and his successor General Donald W. Bennett (Bennett), entered into discussions with SLACS regarding SLACS' possible construction and operation of a state-of-the-art air cargo facility at Lambert. During the discussions, City represented to SLACS that, if SLACS would finance, build and operate an adequate facility, City would

Edwin D. Akers, Jr., Gallop, Johnson & Neuman, L.C., Clayton, for Appellant.

centralize and consolidate all of the air cargo activities at Lambert into the new facility upon its completion. Thereafter, on April 1, 1987, SLACS entered into a written Ground Lease and Agreement (Lease) by which SLACS leased approximately 30 acres of unimproved land from City to construct the facility. The record does not reveal who prepared the Lease. However, the record does indicate that exhibit B to the Lease, which shows all air cargo carriers as tenants of SLACS' facility, was prepared by SLACS.

Subsequently, Bennett and General Floyd Hargrove (Hargrove), Deputy Director of Airports, continued to represent to SLACS that if SLACS would proceed with the construction of the facility at its expense, all of the air cargo activities would be consolidated into the facility, as previously represented. SLACS completed the facility and it became operational in September, 1989. The cost of the new facility was in excess of fifteen million dollars. Since the completion of the new facility, City has not consolidated the air cargo traffic, and allows other tenants at Lambert to compete with SLACS.

On July 28, 1994, SLACS filed a three-count petition against City seeking recovery on the basis of promissory estoppel (Count I), breach of warranty (Count II), and breach of contract (Count III). In Count I, SLACS alleged that it reasonably relied upon the representations of City in calculating the cost of the facility, and as a result of City's failure to consolidate the air cargo activities into SLACS' facility, SLACS suffered damages.

In Count II, SLACS alleged that in reliance upon City's representations, it contracted with City to build the facility at its expense, that it relied upon the representations in calculating its costs and return on its investment and ability to service the required debt, that City's representations were of a material fact and false, that it reasonably relied upon said representations and has suffered damages as a result. In Count III, SLACS alleged that the Lease between the parties required City to consolidate the air cargo business into its facility, that it has performed all obligations imposed upon it, that City has breached the Lease by failing to consolidate the air cargo business, and

that said refusal constitutes a material breach of the Lease resulting in damages to SLACS.

City filed an answer denying the substantive allegations of SLACS' first amended petition. Further responding, City pled fifteen affirmative defenses: 1) the written Lease does not contain the alleged representations of City; 2) the Lease prohibits exclusive rights; 3) the Lease is subordinate to federal agreements; 4) the alleged representations of City violate the statute of frauds; 5) prior representations were merged into the Lease; 6) the Lease requires amendments to be in writing; 7) lack of consideration; 8) City's alleged promises were illegal and void by virtue of § 416.031 RSMo.1994; 9) City's alleged promises are void as they are in violation of Art. III, § 40(28) of the Missouri Constitution; 10) the alleged promises are void because they are in violation of § 3.08 of the Federal Aviation Act, 49 U.S.C. Appx. § 1349; 11) SLACS' damages are not caused by the alleged promises; 12) SLACS defrauded City because SLACS promised to obtain agreements from all cargo carriers to consolidate cargo business into SLACS' facility, but failed to do so; 13) SLACS failed to perform its agreement to obtain all the cargo business; 14) SLACS' Count II is barred by sovereign immunity, § 537.600 RSMo.1994; and 15) the alleged promises of City's representatives were ultra vires. City also filed a multi-count counterclaim against SLACS, alleging in Count I that SLACS is in violation of the Missouri Antitrust Act, § 416.031 RSMo.1994, while Counts II and III were declaratory judgment actions seeking to have the rights of the parties determined under the Lease. Replying, SLACS denied the affirmative defenses of City, and essentially denied the substantive allegations.

Thereafter, City filed a motion for summary judgment. Later, City filed an amended motion for summary judgment, or in the alternative, a stay of proceedings based on SLACS' filing of a formal complaint with the Federal Aviation Administration. The following facts contained in the motion for summary judgment are undisputed by SLACS: 1) SLACS and City entered into the Lease, and exhibit B to the Lease is a one-page

diagram showing all air cargo carriers at Lambert as tenants of SLACS' facility; 2) Griggs was replaced by Bennett on March 23, 1987 as the Director of Airports, and Hargrove assumed the position of Deputy Director of Airports in September, 1989. The positions of Director of Airports and Deputy Director of Airports are civil service classifications within the City of St. Louis and individuals employed in such capacities are employees of City; 3) Gabriel Alberici (Alberici) is a member of the Airport Commission, and prior to the execution of the Lease, he and Griggs represented to SLACS that all air cargo handling at Lambert would be consolidated into SLACS' new facility; 4) Subsequent to the execution of the Lease, Bennett and Hargrove represented to SLACS that all air cargo handling at Lambert would be consolidated into SLACS' new facility; 5) the Lease makes no specific reference to consolidation, but Exhibit B to the Lease shows all of the air cargo carriers at Lambert on SLACS' ramp with specific storage space allotted to each carrier; 6) Accurate tenant information regarding air cargo carriers prior to signing the Lease was material to planning SLACS' facility; 7) SLACS and City were under the mutual assumption that the cargo carriers would sign leases for space in SLACS' facility, and Exhibit B to the Lease is one of the representations made by City to SLACS regarding consolidation; 8) In the fourth "WHEREAS" clause of the lease, City represented to SLACS that the current air cargo buildings and ramps at Lambert were inadequate and a new facility is necessary; and 9) SLACS' president admitted that there were no assurances that all of the cargo carriers would stay at Lambert and utilize SLACS' facility, and SLACS would have no complaint if all cargo carriers moved to another airport and understood that any of them might leave the St. Louis market or close.

City's amended motion contended that it was entitled to summary judgment on all counts as a matter of law because: a) neither the Airport Commission nor the St. Louis Board of Alderman represented to SLACS that all air cargo handling at Lambert would be consolidated into the new facility; b) SLACS admitted that there were no assur-

ances that all of the air cargo carriers would stay at Lambert and utilize SLACS' facility, and SLACS understood that any of the air cargo carriers could leave the St. Louis cargo market; and c) the Lease makes no reference to consolidation of air cargo facilities.

In support of its amended motion for summary judgment, City made specific references to: 1) St. Louis City Revised Ordinances Chapter §§ 18.08 and 18.08.060; 2) sections 1207 and 1213 of the Lease; 3) Exhibit B to the lease; 4) the deposition of Myron Haith, president of SLACS; and 5) the affidavit of Joan Cassidy, Airport Properties Manager for Lambert.

In its response to the amended motion, SLACS essentially denied the substantive allegations, with specific references to: 1) Sections 1.01, 3.01, 3.03, 12.13 and 12.14 of the Lease; 2) Exhibit B to the lease; and 3) Haith's deposition. Further responding, SLACS contends that the Lease is ambiguous and is not a fully integrated contract. Lastly, SLACS contends that its contract with City is comprised of several writings including but not limited to: a) the Lease; b) the Minutes of the Airport Commission approving the Lease and project, dated November 20, 1986; c) a written statement of Griggs; and d) a letter from Bennett to the Federal Aviation Administration dated November 20, 1992.

City's motion was granted. Thereafter, the trial court entered a final judgment as to SLACS' claims pursuant to Rule 74.01(b), finding that "there was no just reason for delay." The trial court did not enter any findings of fact or conclusions of law. SLACS appeals the granting of summary judgment as to Counts II and III, but not as to Count I.

█ It is important to note that City's amended motion for summary judgment contained a motion to stay proceedings pending the outcome of a formal complaint filed by SLACS with the Federal Aviation Administration (FAA) pursuant to 14 C.F.R. § 13.5. The complaint alleged that City engaged in discriminatory practices which violate the Federal Aviation Act, 49 U.S.C.App. § 1401 *et seq.* (1990). This contention in the motion

for summary judgment was not addressed by the trial court. As a result, we must determine *sua sponte* if this creates a jurisdictional problem. *Roberts v. Roberts,* 920 S.W.2d 144, 146[2] (Mo.App.1996).

It has been held that the Federal Aviation Act does not prevent private parties from filing suit with respect to questions of airport management by municipalities. *Niswonger v. American Aviation, Inc.,* 411 F.Supp. 763, 768[8] (1975). Furthermore, the administrative remedies provided by the Act are prospective in nature, and therefore, do not provide SLACS with an adequate remedy to compensate it for past damages. *See Id.* As a result, SLACS can not be relegated to administrative remedies provided in the Act. *See Id.* Therefore, this is not a case in which the FAA has exclusive primary jurisdiction. *See Id.* As a result, we perceive no jurisdictional problem.

In its first point on appeal, SLACS contends that the trial court erred in granting City's amended motion for summary judgment because the undisputed facts establish, as a matter of law, that SLACS has a cause of action against City for breach of warranty. City contends that SLACS has failed to establish that the Lease expressly made a positive representation of a material fact regarding consolidation of air cargo services, and as a result, City is entitled to judgment as a matter of law.

▮ In order to state a cause of action ex contractu in the nature of a breach of warranty based upon a positive misrepresentation of a material fact by a government entity, six elements are necessary: 1) a positive representation by a governmental entity; 2) of a material fact; 3) which is false or incorrect; 4) lack of knowledge by the contractor that the positive representation of the material fact is false or incorrect; 5) reliance by the contractor on the positive representation of a material fact made by the governmental entity; and 6) damages sustained by the contractor as a direct result of the positive representation of a material fact made by the governmental entity. *Ideker, Inc. v. Missouri State Highway Com'n,* 654 S.W.2d 617, 621[1] (Mo.App.1983). A positive or affirmative representation distinguishes an actionable representation from one which is merely implied or suggestive. *Id.* at 624[6, 7]. The representation can be words or other conduct amounting to an assertion not in accordance with the truth, or a statement made to deceive or mislead. *Clark v. City of Humansville, Missouri,* 348 S.W.2d 369, 373[3, 4] (Mo.App.1961). The representation is material if a reasonable person would attach importance to it in determining his choice of action in the transaction in question. *Id.*

Here, it is uncontested that Griggs and Alberici made statements prior to the execution of the Lease that all air cargo at Lambert would be consolidated into SLACS' new facility. These oral statements constitute an actionable representation. *See Clark, supra.* In addition, it is uncontested that subsequent to the execution of the Lease, Bennett and Hargrove made representations that all air cargo handling at Lambert would be consolidated into SLACS' new facility. Furthermore, it is uncontested that exhibit B to the Lease shows all of the air cargo carriers at Lambert parked at SLACS' facility with specific storage space allotted to each carrier as tenants. Plans and drawings which are incorporated into the contract also constitute an actionable representation. *See Ideker, supra.*

In its first amended petition SLACS contends that these representations were material in that a reasonable person would attach importance to them in deciding whether to enter into a contract to construct a new air cargo facility at its own expense. Furthermore, SLACS' amended petition alleges that the representations were false or incorrect, and SLACS had no knowledge that the representations were false or incorrect. In addition, SLACS alleged it relied on the representations and sustained damages as a result.

On appeal, City claims that it is entitled to judgment as a matter of law because: a) sovereign immunity bars SLACS' cause of action; b) § 303 of the Lease bars SLACS' cause of action; and c) § 1213 of the Lease expressly disclaims any warranties made to SLACS regarding consolidation of air cargo services.

City contends that SLACS' breach of warranty claim is a tort cause of action and is barred by sovereign immunity, § 537.600 RSMo.1994. City relies on *Murphy v. City of Springfield,* 738 S.W.2d 521 (Mo.App. 1987), but its reliance is misplaced. In *Murphy,* no written contract existed between the parties, and the Court concluded that the action was basically a tort action for misrepresentation. *Id.* at 525–526 [2, 3]. Here, in contrast, SLACS has a contract with City, i.e. the Lease, and *Ideker, supra,* concluded that where a contract exists between the parties, fundamental fairness has motivated courts to subscribe to the theory of a cause of action ex contractu in the nature of a breach of warranty as opposed to a cause of action ex delicto (fraudulent misrepresentation). *Ideker,* at 621 [1, 2]. In addition, the court held:

> To avoid an unjust result, [courts] refused to be circumscribed by the harshness of the doctrine of sovereign immunity ... [s]yllogistically, where a governmental entity makes a *positive* representation of a material fact relied upon by a contractor ... which turns out to be false or incorrect after work is commenced ... the contractor finds himself in the position of one who undertakes one contract but is confronted with performance of another. The governmental entity, pragmatically speaking, gets the benefit of another contract. (emphasis is the court's)

*Id.* at 621[2]. Thus, sovereign immunity does not bar the cause of action arising out of a contract in the nature of a breach of warranty.

Further, City contends that section 303 of the Lease expressly disclaims any warranties made by City to SLACS. The section provides:

> Section 303. *Exclusivity.* Nothing contained herein shall be deemed to grant to [SLACS] any exclusive right or privilege within the meaning of Section 3.08 of the Federal Aviation Act for the conduct of any activity on the Airport except that, subject to the terms and provisions hereof, [SLACS] shall have the exclusive right to possession of the Leased premises.

Section 303 makes specific reference to Section 3.08 of the Federal Aviation Act, 49 U.S.C.App. § 1349(a) (1990) (repealed and reenacted as 49 U.S.C. § 40103(e) (1994)), which provides in pertinent part:

> There shall be no exclusive right for the *use of any landing area or air navigation facility* upon which Federal funds have been expended. For the purpose of the preceding sentence, the providing of services at an airport by a single fixed-based operator shall not be construed as an exclusive right if it would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and if allowing more than the fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. (emphasis added)

"Landing area" and "air navigation facility" are defined in 49 U.S.C.App. § 1301(8), (27) (1990) as follows:

> Air navigation facility means any facility used in, available for use in, or designed for use in, aid of air navigation, including landing areas, lights, any apparatus or equipment for disseminating weather information, for signaling, for radio-directional finding, or for radio or other electrical communication, and any other structure or mechanism having a similar purpose for guiding or controlling flight in the air or the landing and take-off of aircraft.

* * *

> Landing area means any locality, either of land or water, including airports and intermediate landing fields, which is used, or intended to be used, for the landing and takeoff of aircraft, whether or not facilities are provided for the shelter, servicing, or repair of aircraft, or for receiving or discharging passengers or cargo.

Here, the record does not reveal that SLACS' facility is an air navigation facility or landing area as provided in 49 U.S.C.App. § 1301(8) or (27). SLACS' new air cargo facility does not aid in the landing and take-off of aircraft, nor does it assist with disseminating weather information as required by 49 U.S.C.App. § 1301(8). Furthermore, the record does not reveal if the air cargo facility

assists aircraft with radio communication or radio-directional finding as required by 49 U.S.C.App. § 1301(8). In addition, the record does not reveal if SLACS' new facility is used or intended to be used for the landing and take-off of aircraft as defined in 49 U.S.C.App. § 1301(27). Finally, the record does not reveal any evidence presented by City in support of its motion showing that SLACS' facility is a landing area or air navigation facility within the meaning of § 3.08. As a result, City's motion has failed to set forth with particularity undisputed facts which establish that SLACS' facility is a landing area or air navigation facility within the meaning of section 3.08 of the Federal Aviation Act. *See* Rule 74.04(c)(1). Therefore, its reliance on § 303 of the Lease is not meritorious.

■ City also contends that section 1213 of the Lease expressly disclaims any warranties made to SLACS regarding consolidation of air cargo services. Section 1213 provides:

*Entire Agreement.* This Agreement, together with all exhibits attached hereto, constitutes the entire agreement between the parties hereto, and all other representations or statements heretofore made, verbal or written, are merged herein.

However, in *Ideker, supra,* a contractor submitted a bid on a construction project and relied on plans and specifications provided by the Highway Commission in calculating its bid. The plans and specifications represented that the project would be a "balanced" job. After the contractor was selected and work on the project began, it became apparent that the project was not a "balanced" job. The Highway Commission contended that the plans and specifications, along with the bid proposal, contained a provision reciting that the contractor has made his own "examination of the site and is aware of the conditions to be encountered" prior to submitting their bid on the project. As a result, the Highway Commission contended that this provision prevented the contractor from recovering on a breach of warranty theory. However, the Court held that such contract provisions in the nature of "boiler plate" provisions cannot nullify a positive representation of a material fact, but such a disclaimer may negate implied or suggestive representations. *Ideker,* 654 S.W.2d at 623[3].

Here, it is uncontested that Griggs and Alberici made representations to SLACS that all air cargo operations would be consolidated into SLACS' new facility. Furthermore, exhibit B to the Lease, which shows all air cargo carriers using SLACS' new facility with specific storage space allotted for each carrier, makes a positive representation of a material fact. As previously stated, these representations can provide a basis for SLACS' current claim. *See Clark, supra; see Ideker, supra.* Therefore, section 1213 of the Lease does not negate the positive representations of a material fact made by City. As a result, the trial court erred in granting summary judgment in favor of City on Count II of SLACS' first amended petition.

■ In its second point on appeal, SLACS contends that the trial court erred in granting summary judgment in favor of City on Count III, breach of contract, of its first amended petition because: 1) the Lease provides for consolidation of air cargo services, and the undisputed facts do not entitle City to judgment as a matter of law; or 2) the Lease is ambiguous and City is not entitled to judgment as a matter of law. City contends that the Lease is unambiguous and does not expressly provide for consolidation of air cargo services. Therefore, § 432.070 RSMo.1994, prohibits SLACS from recovering on a breach of contract theory.

Section 432.070 provides:

No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, not unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract, and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

City contends that since the contract did not expressly state that all air cargo services would be consolidated into SLACS' new facility, it does not have an obligation to consolidate said services.

Here, the record indicates that the Lease between SLACS and City was in writing, dated, and signed by both parties. Further, exhibit B to the Lease shows all of the air cargo carriers using SLACS' facility, with specific storage space allotted for each carrier. Exhibit B also shows the dimensions of the facility as well as the length of ramp space which SLACS was required to build. Furthermore, City's amended motion admits that exhibit B is one of several representations made by it to SLACS regarding consolidation, and that it is bound by it. As a result, viewing the record in the light most favorable to SLACS, it may be inferred from the entire Lease that air cargo services would be consolidated into SLACS' facility. *See ITT, supra.* Therefore, the trial court erred in granting summary judgment in favor of City on Count III of SLACS' first amended petition.

The judgment of the trial court as to Counts II and III are reversed.

PUDLOWSKI, P.J., and HOFF, J., concur.