**ESSEX DEVELOPMENT, INC.,**
Plaintiff–Appellant,

v.

**COTTON CUSTOM HOMES, L.L.C.,**
Defendant–Respondent.

No. ED 86691.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 11, 2006.

Scott M. McKinnis, St. Louis, MO, for Appellant.

Graham L.W. Day, Robert S. Kenney, St. Louis, MO, for Respondent.

ROY L. RICHTER, Judge.

### Introduction

Plaintiff–Appellant Essex Development, Inc. ("Essex Development") appeals from the decision granting Defendant–Respondent Cotton Custom Home's ("Cotton") motion for summary judgment, and denying Essex Development's motion for summary judgment. We reverse and remand for further hearing.

This case arises out of a dispute between two real estate developers co-developing a sub-division of single-family homes in Jefferson County, Missouri. The dispute involves determining whether the construction contract in question contemplated a "costs plus fee" format, where such a format was not specifically stated in the contract. Did the contract allow the seller to pass along to the buyer its actual costs of construction plus an additional 15% charge for profit and overhead from one of its contractors, where the contract does not explicitly address the payment of such a charge?

### Standard of Review

Since this appeal involves our review of the trial court's grant of summary judgment, our review is *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Ma-*

*rine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom summary judgment was entered. *Id.* Furthermore, we accord the non-moving party all reasonable inferences from the record. *Id.*

### Factual and Procedural Background

Viewed in the light most favorable to Essex Development, in June of 2002, Cotton and Essex Development entered into a written contract to develop a community of single-family homes called Buena Vista Development ("Development") on undeveloped land which Cotton owned in Jefferson County. Prior to the contract being signed, Cotton had sought to independently develop the land. The land in question was legally held by an entity owned by Cotton called Romaine Valley Properties, L.L.C. ("Romaine"). Cotton owned another entity, Buena Vista, L.L.C. ("Buena Vista"), a real estate development company that Cotton wanted to actually develop the land owned by Romaine. Since Cotton lacked the financial resources to acquire the financing necessary to complete the project on its own, it sought the assistance of Essex Development, which had sufficient experience and resources to complete the project.

The primary contract in dispute in this case called for Cotton to purchase from Essex Development 61 fully-developed lots of single-family homes on the land previously held by Romaine. Cotton had previously conveyed Buena Vista's assets, as well as Romaine's land, to Essex Development. Essex Development was to use its resources and expertise to develop the property, and ultimately convey the developed lots back to Cotton, which would then market the lots to the general public.

The contract also provided that during the construction process Buena Vista could petition Jefferson County to create a Neighborhood Improvement District ("NID"). If the NID was granted, Jefferson County would assist in financing the Development. Buena Vista petitioned Jefferson County for the NID, which Jefferson County approved. During this time, another related company, Essex Contracting, Inc. ("Essex Contracting"), submitted a bid to Jefferson County to do the construction work resulting from the NID.[1] The trial court, in its order granting summary judgment to Cotton, specifically noted that Essex Contracting's bid to Jefferson County did *not* include an extra charge of 15% for profit and overhead. Jefferson County ultimately awarded Essex Contracting the contract for the NID-related work.[2]

Essex Contracting performed the NID work for Buena Vista, and during the construction phase of the project submitted numerous "Pay Applications" and "Job Cost Reports" to Buena Vista for payment. Pursuant to a separate oral agreement between Essex Contracting and Buena Vista, each of these documents contained a handwritten notation adding 15% to the final cost. It is these additional charges that are the central controversy of this case. These additional charges are in dispute because they were added to the final payment that Buena Vista/Essex Contracting sought from Cotton upon the closing of their original deal. Essex Contracting cited the 15% charges as "profit and overhead."

---

1. It is important to note that Essex Contracting, although a distinct legal entity, is owned by the same principals as Essex Development.

2. We note that Essex Contracting was the only contractor to submit a bid to perform the NID work.

The dispute centers on the language of the original contract providing for the final "Purchase Price" that Cotton would pay Essex Development for the lots, and whether the addition of Essex Contracting's surcharges was contemplated by the parties, where such charges were not explicitly provided for in the contract. Although the parties dispute the interpretation of the relevant provisions of the contract, they do not dispute its language, which reads, in pertinent part, as follows:

2. *Purchase Price*

The "Purchase Price" for all lots shall be equal to the total amount of:

a. All of Seller's original costs for acquisition of the Real Property constituting the Buena Vista Subdivision. . . . The original acquisition costs shall include not only the purchase price of the Real Property including interest, incurred by Seller in acquiring and financing the Real Property.

\* \* \*

c. All otherwise unreimbursed costs of development of the subdivision incurred by Seller [Essex Development], including all costs of construction of the Improvements, and all costs of maintenance of the subdivision until the last Lot is sold or conveyed.

d. All unreimbursed costs incurred by Seller, if any, of implementation of a NID (as defined in Paragraph 9) to develop subdivision, including the costs of any surety bonds or letters of credit required by the NID.

In particular, sub-section (c) of the "Purchase Price" paragraph is the central focus of this litigation because Essex Development argues that this provision allows it to pass along to Cotton Essex Contracting's 15% charge for "profit and overhead" as one of the other "unremimbursed costs of development." Conversely, Cotton argues that this 15% charge should not be passed along for two reasons: first, it was not contemplated by the parties, and second, the plain language of the contract does not allow for such a charge, where it is not a true "cost of development." Cotton objected to paying these charges because they were not a true "cost of development" in that Essex Development, Buena Vista, and Essex Contracting were all owned by the same principals at the time, and therefore, such a payment between these entities was tantamount to a payment to itself, which Cotton clearly did not contemplate paying.

Cotton refused to pay Essex Development for these disputed charges, which amounted to $200,000. Prior to the closing on the lots, the parties entered into an agreement to set up an escrow account to facilitate the closing on a timely basis. As part of the escrow agreement, the parties placed $200,000 of the proceeds from the lot closing into the escrow account, pending the resolution of this dispute.

Following the closing on the lots and the establishment of the escrow account, Essex Development, as the owners of Buena Vista, filed this action for breach of contract as well as declaratory judgment, seeking to recover the balance of the escrow account. In its reply, Cotton asserted several affirmative defenses and counterclaims, and also filed a petition for declaratory judgment and breach of contract. During discovery, Cotton propounded several requests which sought to examine and clarify the relationship between Buena Vista, Essex Development, and Essex Contracting. Essex Development objected to many of these requests, at which time Cotton amended its petition to include a count for piercing the corporate veil/alter ego and breach of implied

covenant of good faith and fair dealing. These counts were added to facilitate Cotton's investigation of the relevant relationship between the three entities.

Both parties filed motions for summary judgment and the trial court received the parties' briefs and heard oral argument. The trial court then issued its order granting Cotton's motion and denying Essex Development's motion, finding that the plain and unambiguous language of the contract did not provide for the inclusion of a 15% surcharge for Essex Contracting's profit and overhead. Essex Development then filed a motion for reconsideration, which the trial court denied. This appeal followed.

### Discussion

■ In Essex Development's first Point Relied On it argues that the trial court erred in denying its own motion for summary judgment because the court improperly relied on extrinsic evidence in finding that the contract between Buena Vista/Essex Development and Cotton did not include a provision allowing for a 15% surcharge for profit and overhead. Specifically, Essex Development argues that the trial court improperly considered the fact that Essex Contracting's bid to Jefferson County for the NID contract did *not* provide for a 15% surcharge for profit and overhead, and therefore, the trial court committed reversible error. Essex Development argues in its second Point Relied On that the trial court erred in granting Cotton's motion for summary judgment because genuine issues of material fact exist. We agree with Essex Development that genuine issues of material fact exist in this case, thus precluding a grant of summary judgment.

■ As stated in *Zeiser v. Tajkarimi,* this Court held that " 'Summary judgment is inappropriate in an action arising out of a contract ... where the disputed contract language is ambiguous and parol evidence is required to interpret the contract and the parties' intent.' " 184 S.W.3d 128, 132 (Mo.App. E.D.2006) *quoting Northwest Plaza, L.L.C., v. Michael–Glen, Inc.,* 102 S.W.3d 552, 557 (Mo.App. E.D.2003). In *Zeiser,* we further noted that, "[w]here a contract is ambiguous, then a question of fact arises as to the intent of the parties as to its meaning, and thus it is error to grant summary judgment." *Zeiser,* 184 S.W.3d at 132–33. Rather, the determination of the parties' intent should be left to the jury. *Id.* at 133.

In this case, we believe that Section 2 of the contract involving the "Purchase Price" was ambiguous to the extent that the parties dispute whether Essex Contracting's 15% surcharges for "profit and overhead" were contemplated as legitimate "unreimbursed costs" to be passed along to Cotton. Furthermore, we believe a sufficient factual issue remains in dispute, thus precluding a grant of summary judgment. Specifically, a material factual dispute exists concerning whether the parties contemplated that Essex Contracting's surcharges for profit and overhead constitute one of the costs described in subparagraph 2(c) of the contract.

The trial court stated in its order that since there is "no explicit paragraph or other language in the Contract allowing for a 15% charge for overhead and profit, ... this charge is not properly included in the purchase price." The trial court primarily relied on *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261 (Mo. banc 1973) for this finding. In *J.E. Hathman,* the Missouri Supreme Court also dealt with a dispute over a "costs plus fee" construction contract, and found that it was unambiguous and clearly provided for a 6% charge for profit and overhead, where the contract's heading ex-

plicitly stated the following: "Agreement between Contractor and Owner Cost Plus Fee Basis." *Id.* at 265.

In this case, the trial court stated in its order that "[u]nlike the contract at issue in *J.E. Hathman,* the Contract between Buena Vista/Essex Development and Cotton Custom Homes did not include a provision 15% [sic] charge for overhead and profit." However, we do not read *J.E. Hathman* to say that the only way parties to a contract may contemplate a "cost plus fee" agreement is to explicitly so state it in the contract. Here, the parties used a broad definition of what was included in the "Purchase Price," as the contract used very open-ended language: "*[a]ll* otherwise unreimbursed costs" of the development, "*all* costs of construction of the improvements," and "*all* costs of maintenance of the subdivision" (emphasis added). Given the parties' repeated use of the word "all" in this sentence, Cotton would be hard-pressed to argue that Essex Contracting's 15% charges were not contemplated, *if* they were indeed legitimate "costs." Accordingly, the real issue is whether these 15% surcharges constitute legitimate "costs" under the contract.

Furthermore, Essex Development points out in its brief that Cotton was a "sophisticated real estate developer, keenly aware of the 'cost plus' concept," common in the construction industry. Regardless of whether Cotton was "sophisticated" or familiar with the "cost plus fee" concept, the specific language of this contract neither explicitly included nor excluded a "cost plus fee" arrangement. Based on the record before us, we believe a reasonable trier-of-fact could resolve this question either way. Therefore, based on the language contained within the four corners of this contact, we cannot say that the omission of such a clause necessarily means that these surcharges were not a "cost" contemplated by the parties. Rather, we believe this is a factual question appropriate for resolution by the trier-of-fact upon hearing all the evidence in this case.[3] Thus, this case was not ripe for disposition on summary judgment.[4] Accordingly, Essex Development's first point is denied but its second point is granted.

The judgment of the trial court is RE-VERSED and REMANDED.

GLENN A. NORTON, C.J., and KENNETH M. ROMINES, J., Concur.

---

3. We also note that section 2(d) of the contract provides for the payment of "unreimbursed costs" associated with the NID. Therefore, to the extent that any "Pay Applications" and "Job Cost Reports" containing these 15% charges were included in the amount Essex Development/Buena Vista sought from Cotton for NID work, we believe a factual issue also exists concerning whether these surcharges constitute legitimate "costs" under sub-paragraph 2(d) of the contract.

4. In addition, we note that the trial court briefly discussed the fact that Essex Contracting's bid to Jefferson County for the NID contract did not include a provision for charging an extra 15% for profit and overhead. We mention this because, to the extent the trial court relied on this fact in determining that the Essex Development/Cotton contract did not contemplate the inclusion of such a charge, this would also be reversible error as improper reliance on extrinsic evidence, given the trial court's ruling that the contract was unambiguous. However, this issue is moot given our determination of ambiguity.