# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2210

_____

Lafarge North America, Inc., formerly   *
known as Lafarge Corporation,   *
  *
      Plaintiff-Appellant,   *
  *   Appeal from the United States
    v.   *   District Court for the Western
  *   District of Missouri.
Discovery Group L.L.C.; Explorer   *
Investments 1 L.L.C.; Steven J. Tharpe;   *
Douglas E. Pope,   *
  *
      Defendants-Appellees.   *

_____

Submitted: January 16, 2009
Filed: July 27, 2009

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Lafarge North America, Inc. ("Lafarge") appeals from the district court's order granting summary judgment in favor of Discovery Group L.L.C. ("Discovery Group"), Explorer Investments 1 L.L.C. ("Explorer"), Steven Tharpe, and Douglas Pope (collectively, the "Defendants") on its claims for breach of contract, negligent and fraudulent misrepresentation, breach of fiduciary duty, negligence, and rescission. We reverse.

# I

This case arises from a transaction in which Lafarge hired the Defendants to assist with the relocation of its Missouri Division Headquarters, which prior to March 2001 had been located in Kansas City, Missouri. Lafarge found it necessary to relocate because the headquarters was situated on a very active floodplain. In July 1999, Robert Diakiw, then Vice President and General Manager of Lafarge's Missouri operation, began discussions with Discovery Group concerning its ability to assist Lafarge with the relocation.

In July 1999, Discovery Group submitted a Real Estate Services Proposal (the "Proposal") to Lafarge, which stated Discovery Group would "provide an initial profile of the project objectives." The Proposal included wording as to Discovery Group having already begun "to identify the key players in terms of Owners, Brokers, Government authorities and general resources to assist with the site/building selection phase of our work." The Proposal further stated it would be Discovery Group's "goal to essentially serve as an extension of the Lafarge real estate department function," and Discovery Group would serve as "[a] single source for all Kansas City relocation activities," offer "[a] strategic approach to the relocation process," and integrate "the research, capital, economic, planning, design, construction, transaction and consulting functions."

Thereafter, Discovery Group and Lafarge entered into an Exclusive Representation Agreement ("ERA") effective as of August 1, 1999. Discovery Group agreed to assist Lafarge with site selection for the relocation of its headquarters. They also agreed upon selection of a site, it was Lafarge's intentions to have an entity related to Discovery Group, i.e., Explorer, purchase the selected property and enter into a triple net operating lease with Lafarge. Relevant to this appeal, the ERA provided:

Discovery will undertake it best efforts to represent [Lafarge] in prospecting for and identifying prospective real estate sites . . . . Discovery will search for sites and/or buildings and review each prospective real estate location with regard to its ability to achieve the objectives of [Lafarge] with respect to the Representation Agreement.

The ERA also stated that Lafarge "confirms its review and acknowledgment of the Attached Exhibit 'A' Agency Disclosure and Representation Provisions required by the Missouri Real Estate Commission." Exhibit A was Missouri Revised Statute § 339.730, which sets forth various disclosures and responsibilities of a real estate agent; it includes, among other things, a requirement for the agent to exercise reasonable care and skill and to disclose to the client all adverse material facts known by the agent.

As Discovery Group began prospecting for and analyzing various potential sites for Lafarge's Missouri headquarters, it periodically sent Lafarge updates on its progress. On September 16, 1999, Discovery Group sent its first progress report to Lafarge, which listed one of the priority objectives of Phase One as "Understand Local Government Policies." The report stated Discovery Group was "In Process" with respect to this objective, noting it has "met with officials in Blue Spring and Independence to discuss economic and site concerns." On October 1, 1999, Discovery Group sent Lafarge another progress report indicating it was "In Process" with respect to the objective of "[f]urther understand[ing] land values and government incentives at each of the locations." On October 15, 1999, a third progress report once again affirmed that Discovery Group was "In Process" with respect to "understand[ing] land values and government incentives at each of the locations."

Consistent with the ERA, Discovery Group presented Lafarge with fifteen possible site locations. Based on Discovery Group's advice, Lafarge selected a parcel referred to as the "Chapel Ridge" site located in Lee's Summit, Missouri. Lafarge received no economic incentives for relocating to the Chapel Ridge site other than

standard state tax credits. Discovery Group next contacted Chapel Development L.L.C. ("Chapel Development") about having an entity related to Discovery Group (Explorer) purchase the property. Involved in the transaction were two representatives of Chapel Development, Michael Atcheson and Larry Haas.[1] Chapel Development eventually agreed to acquire the Chapel Ridge property and sell it to Explorer.

Around this same time, Chapel Development and other entities owned by or associated with Atcheson and Haas brought a petition in the Circuit Court of Jackson County, Missouri, for the formation of the Strother Transportation Development District (the "Strother District"). The Strother District sought to impose an additional 1/2 percent sales tax on all transactions occurring within the district, the proceeds of which would fund a proposed interchange and other infrastructure improvements. The Chapel Ridge site is located within the Strother District. Shortly before closing on the property, Discovery Group learned of the proposed Strother District. Despite knowledge of the proposed Strother District – and its tax consequences for those located therein – Discovery Group/Explorer completed the purchase of the Chapel Ridge property on December 3, 1999, without informing Lafarge of the Strother District.

The Strother District was formed on January 21, 2000. On March 30, 2000, Lafarge and Explorer executed a lease of the Chapel Ridge property. The Strother District was approved on April 25, 2000.

Throughout this process, Lafarge did not, consistent with its past practice, intend to collect sales tax from its Missouri headquarters regardless of its location. Lafarge believed that, because the vast majority of its sales were made by mobile sales associates, its responsibility was to collect sales tax applicable to the plant from which

---

[1]The Defendants filed a third-party claim for breach of contract and indemnification against Chapel Development, Atcheson, and Haas. The district court's resolution of the third-party claims is the subject of a separate appeal.

the material being sold originated. Lafarge first learned of the Strother District in March 2001 when representatives contacted Lafarge regarding collection of the 1/2 percent sales tax. Lafarge claimed it did not owe sales tax to the Strother District because it did not conduct any sales from its headquarters in Chapel Ridge. Lafarge then sent a letter to the Missouri Department of Revenue seeking clarification. The Department of Revenue disagreed with Lafarge and concluded it must collect sales tax at its headquarters in Chapel Ridge, which in turn made Lafarge liable for the sales tax imposed by the Strother District. Shortly thereafter, Lafarge once again relocated its headquarters, choosing a location outside of the Strother District and for which it received governmental incentives based on sales tax revenue.

Lafarge brought this diversity action against the Defendants in the Western District of Missouri for (1) breach of the ERA, (2) fraudulent misrepresentation, (3) negligent misrepresentation, (4) breach of fiduciary duty, (5) negligence, and (6) rescission of the lease agreement. Lafarge contended the Defendants had an obligation, both in contract and tort, to disclose the existence of the Strother District. Defendants moved for summary judgment, which the district court granted. The court concluded Lafarge's breach of contract claim failed because the ERA did not impose an obligation on Discovery Group to investigate or disclose economic incentives and tax obligations. It likewise granted summary judgment on Lafarge's fraudulent misrepresentation, negligent misrepresentation, and breach of fiduciary duty claims because it determined the existence of the Strother District was not a material fact, and the court further concluded the negligence claim failed because Defendants did not owe a duty to disclose the Strother District. Finally, the court granted judgment on Lafarge's rescission claim because it determined the lease was not based on any fraudulent misrepresentation, misapprehension, or mistake. Lafarge appeals each of the district court's conclusions.

II

We review the district court's grant of summary judgment de novo. Urban Hotel Dev. Co., Inc. v. President Dev. Group, L.C., 535 F.3d 874, 877 (8th Cir. 2008). "Summary judgment is appropriate if the evidence, viewed most favorably to the non-moving party, establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id. In a diversity action such as this, we are required to apply Missouri law. See id.

*Breach of Contract*

In Missouri, a party seeking to establish a breach of contract claim must prove: "(1) the existence of a valid contract; (2) the rights and obligations of each party; (3) breach; and (4) damages." Evans v. Wele, 31 S.W.3d 489, 493 (Mo. Ct. App. 2000). Though the parties agree the ERA is a valid contract, they dispute the rights and obligations of each party under the contract.[2] Specifically, Lafarge asserts the ERA obligated Discovery Group to investigate economic incentives and disclose important tax information, i.e., the Strother District. Although the contract nowhere discusses economic incentives or prevailing tax rates, Lafarge relies on the ERA's language which states, "Discovery will search for sites and/or buildings and review each prospective real estate location with regard to its ability to achieve the objectives of [Lafarge] with respect to the Representation Agreement." Lafarge argues its "objectives" as intended by the contract include available economic incentives and tax rates; thus, it argues Discovery Group was obligated under the terms of the contract to investigate economic incentives and disclose prevailing tax rates. To support its interpretation of the ERA, Lafarge relies on Discovery Group's Services Proposal – in which it states Discovery Group would provide a profile of project objectives and had begun to identify key players in terms of government authorities – and its status updates – in which Discovery Group identified understanding government policies

---

[2]Lafarge's breach of contract claim is asserted solely against Discovery Group because it is the only Defendant that is a party to the ERA.

-6-

and incentives at each location as "objectives." In response, Discovery Group argues the contract is unambiguous and contains no reference to economic incentives or tax rates, and, as such, the parole evidence rule bars Lafarge's attempts to create an ambiguity through extrinsic evidence.

"The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and give effect to that intention." J.E. Hathman v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo. 1973). If the contract is unambiguous, then the intent of the parties is to be gathered from the contract alone, and "any extrinsic or parole evidence as to the intent and meaning of the contract must be excluded from the court's review." Vidacak v. Okla. Farmers Union Mut. Ins. Co., 274 S.W.3d 487, 490 (Mo. Ct. App. 2008). Where a contract is ambiguous and unclear, however, "a court may resort to extrinsic evidence to resolve an ambiguity." Burrus v. HBE Corp., 211 S.W.3d 613, 616 (Mo. Ct. App. 2006). "A contract is ambiguous when it is reasonably susceptible to different constructions." Id. (internal quotation marks omitted). Whether a contract is ambiguous is a question of law. Edgewater Health Care, Inc. v. Health Sys. Mgmt., Inc., 752 S.W.2d 860, 865 (Mo. Ct. App. 1988). If a contract is ambiguous, "then a question of fact arises as to the intent of the parties, and thus it is error to grant summary judgment." Essex Dev., Inc. v. Cotton Custom Homes, L.L.C., 195 S.W.3d 532, 535 (Mo. Ct. App. 2006).

Viewing the ERA in its entirety, we conclude it is ambiguous whether Discovery Group was obligated to investigate economic incentives and disclose prevailing tax rates. Discovery Group contracted to search for sites and review each prospective location with regard to its ability to achieve Lafarge's "objectives," which is an undefined term in the ERA. See Burrus, 211 S.W.3d at 618 n.4 (noting that while a contract term is not automatically rendered ambiguous simply because it is undefined, it is relevant to the court's analysis when the term is capable of more than one reasonable construction). It seems axiomatic that part of Lafarge's objectives in selecting prospective sites included economic considerations, such as a location's cost,

appraised value, potential for appreciation, etc. As such, it is reasonable to conclude one of those economic considerations relevant to Lafarge's search was the economic incentives and tax rates existing at particular locations. Therefore, it is reasonable to construe the term "objectives" in the ERA to include the economic benefits and drawbacks to Lafarge of selecting a particular site, which in turn imposes an obligation to investigate and disclose to Lafarge existing economic incentives and tax rates.

Discovery Group argues the only "objectives" contemplated by the agreement were Lafarge's goals in having an entity related to Discovery Group purchase a site, build or renovate a building as necessary, and thereafter enter into a triple net operating lease with Lafarge. Thus, according to Discovery Group, its only obligation under the contract was to review sites in accordance with their ability to meet those goals without regard to any other factors – economic or otherwise – impacting the site. While this may be a reasonable interpretation of the contract, it is also reasonable to construe the term "objectives" as encompassing more considerations than those advanced by Discovery Group. Under Discovery Group's interpretation of the word "objectives," Lafarge apparently would not be concerned with several major details impacting the attractiveness of particular sites, such as a location's cost, whether it was overpriced, its potential for appreciation, taxation rates, etc. This would mean Discovery Group's sole obligation was to identify sites that could be purchased and leased to Lafarge, without having to disclose any beneficial or negative facts relevant to that site. For example, under Discovery Group's interpretation of the contract, Lafarge did not even have the objective of ensuring that its new location was not in a floodplain, even though that was the very reason Lafarge was relocating in the first place.

As such, it is reasonable to conclude that the term "objectives" in the contract encompasses more than Discovery Group selecting a site which could be purchased by Explorer, renovated to suit Lafarge's needs, and then leased to Lafarge. Given the

obvious economic considerations involved, as well as the contract's failure to define the relevant terms, it is reasonable to interpret Discovery Group's obligation to "search for sites" and "review each prospective location" in accordance with Lafarge's "objectives" as requiring Discovery Group to investigate and disclose the economic considerations impacting a particular site, which necessarily encompasses taxation rates. In the end, however, we do not decide which interpretation is more reasonable, but only that both interpretations are reasonable. Because the ERA is reasonably susceptible to multiple constructions – one of which imposes a requirement on Discovery Group to review and disclose existing economic incentives and prevailing tax rates and one of which does not – the contract is ambiguous about whether the parties intended Discovery Group to undertake such an obligation.

Because the contract is ambiguous, a question of fact arises as to the parties' intent, and extrinsic evidence may be introduced as proof of the parties' intent. See Burrus, 211 S.W.3d at 616. Both parties have extrinsic evidence favorable to their interpretation of the contract and the meaning of the term "objectives." Discovery Group can introduce evidence that Lafarge did not care about prevailing tax rates because it did not believe them relevant, never discussed economic incentives, and could have easily included this obligation in the contract if such was its desire. In contrast, Lafarge can introduce evidence that Discovery Group represented prior to the contract they would meet with government authorities, and it identified "Understand Local Government Policies" as an "objective" in its status reports. It is for a jury, not this court, to weigh the evidence, along with the terms of the contract, and make a factual determination of the parties' intent concerning Discovery Group's obligation to investigate and disclose economic incentives and tax rates.[3] Thus, we

---

[3]The district court concluded even if the contract was ambiguous, Lafarge's extrinsic evidence was "minimal." As previously noted, however, once a contract is deemed ambiguous, a question of fact arises and the issue is reserved for the jury. Essex, 195 S.W.3d at 535.

reverse the district court's grant of summary judgment in favor of Discovery Group on Lafarge's breach of contract claim.

*Fraudulent and Negligent Misrepresentation*

The elements of a fraudulent representation claim in Missouri are: "(1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's reasonable reliance on its truth; and (5) the hearer's consequent and proximately caused injury." Kesselring v. St. Louis Group, Inc., 74 S.W.3d 809, 813 (Mo. Ct. App. 2003). To state a claim for negligent misrepresentation, a plaintiff must prove:

> (1) the speaker supplied information in the course of his business; (2) because of a failure by the speaker to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) due to the listener's reliance on the information, the listener suffered a pecuniary loss.

Id. While similar, there are two differences between a fraudulent misrepresentation claim and a negligent misrepresentation claim. First, "fraudulent misrepresentation requires that the person knowingly or recklessly supplied false information, whereas negligent misrepresentation requires no such knowledge or recklessness." Id. Second, "negligent misrepresentation requires that the information be supplied in the course of the defendant's business." Id.

The district court granted summary judgment on Lafarge's misrepresentation claims because it concluded the existence of the Strother District, of which the failure to disclose made certain prior representations false, was not material to Lafarge. The court relied on the undisputed fact that Lafarge had not in the past reported sales tax from the location of its headquarters and did not intend to report sales tax from its new

-10-

location. Furthermore, the court relied on testimony by David Addison, Lafarge's controller of its North America Division, explicitly stating the existence of the Strother District would not have been of consequence to him. For the following reasons, we disagree with the district court's materiality analysis.

Materiality is a question of fact for the jury, "but when the misrepresentation is of such a nature that all minds would agree it is or is not material the question is appropriate for summary judgment." Continental Cas. Co. v. Maxwell, 799 S.W.2d 882, 889 (Mo. Ct. App. 1990). A "representation is material if a reasonable person would attach importance to it in determining his choice of action in the transaction in question." St. Louis Air Cargo Serv., Inc. v. City of St. Louis, 929 S.W.2d 821, 826 (Mo. Ct. App. 1996); Brown v. Bennett, 136 S.W.3d 552, 556 (Mo. Ct. App. 2004) ("Facts to which a reasonable person might be expected to attach importance in making one's choice of action are material."). Because it focuses on a reasonable person, the "test of materiality . . . is an objective one, to be evaluated by the facts and circumstances of the transaction in question." DeLong v. Hilltop Lincoln-Mercury, Inc., 812 S.W.2d 834, 840 (Mo. Ct. App. 1991). Thus, the participants' subjective beliefs concerning the importance of the misrepresentation at issue are immaterial to our analysis.

We conclude a genuine issue of fact exists whether disclosure of the Strother District was material. A factfinder could conclude that a reasonable business engaged in selling construction materials would attach importance to a special sales tax when choosing the location of its new headquarters. Lafarge is a business which conducts sales from its headquarters and is obligated to pay sales tax according to the rate of taxation in the jurisdiction of its headquarters. It seems simple enough to say that a business conducting sales from its headquarters would attach importance to a special sales tax when choosing where to relocate it headquarters.

Although the above point is easily made, the confusion lies in the fact that while Lafarge is required to pay sales tax at its headquarters, it did not – at the time – understand its obligation. As such, Lafarge had not reported sales tax from its headquarters and did not intend to report sales tax from its headquarters in its new location. By considering such facts, however, the district court (and Defendants) mistakenly take subjective considerations into account while applying an objective standard. A reasonable business conducting sales from its headquarters would have placed importance on the Strother District in selecting a site for its headquarters. The fact that Lafarge, based on an incorrect interpretation of Missouri law, mistakenly believed it did not conduct sales from its headquarters is a subjective factor irrelevant under an objective analysis. A reasonable company in Lafarge's position with a correct understanding of the law would have attached importance to the Strother District. That Lafarge was mistaken in its understanding of the law goes to the subjective importance *it* would have placed on the Strother District, not the importance a *reasonable company* would have placed on the same information. See Osterberger v. Hites Constr. Co., 599 S.W.2d 221, 228 (Mo. Ct. App. 1980) ("The test of materiality . . . is not, subjectively, whether the fact concealed would have affected the conduct of the particular buyer concerned but, rather, whether, objectively, the fact concealed would have affected the conduct of a reasonably prudent buyer.").

While the importance Lafarge would have placed on the Strother District because of its beliefs concerning its tax obligations is relevant for purposes of causation – i.e, whether Lafarge in fact would have proceeded differently had it known of the Strother District – it is irrelevant with respect to materiality.[4] Because

_____

[4]Although the parties argued the element of causation below, the district court did not discuss causation, and the Defendants do not argue a lack of causation on appeal. Thus, we leave this issue for the district court to resolve. See Schweiss v. Chrysler Motors Corp., 922 F.2d 473, 476 (8th Cir. 1990) (explaining that we may decline to address an issue not reached by the district court "where there are factual questions still to be resolved or where we would benefit from having the District Court decide the issue in the first instance"). Furthermore, we make no ruling with

a reasonable company in Lafarge's position would have attached importance to the Strother District, the failure to disclose its existence was material. Therefore, we reverse the district court's grant of summary judgment in favor of Defendants on Lafarge's claims of fraudulent and negligent misrepresentation.[5]

*Breach of Fiduciary Duty*

In Missouri, a claim for breach of fiduciary duty has four elements: (1) the existence of a fiduciary relationship between the parties; (2) a breach of that fiduciary duty; (3) causation; and (4) harm. Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 411 (Mo. Ct. App. 2000). Under Missouri common law, a real estate broker and client have a fiduciary relationship. Am. Mortgage Inv. Co. v. Hardin-Stockton Corp., 671 S.W.2d 283, 290 (Mo. Ct. App. 1984). As such, a broker, among other things, is "obligated . . . to make a complete and full disclosure of all material facts concerning the transaction." Id. In 1997, Missouri enacted Missouri Revised Statute § 339.730, "which is intended to take the typical real estate agency relationship out of the realm of common law agency." Lowdermilk v. Vescovo Bldg. & Realty Co., Inc., 91 S.W.3d 617, 629 (Mo. Ct. App. 2002) (internal quotation marks and citation omitted). The statute imposes upon a broker an obligation to disclose "all material adverse facts

---

respect to the other elements of Lafarge's misrepresentation claims.

[5]We affirm the district court with respect to certain specific representations made in a brochure produced by Discovery Group. The brochure was not created until April 2000 (after Lafarge contracted with Discovery Group, selected the Chapel Ridge site, and entered into a lease with Explorer), and there is no evidence how Lafarge could have relied on representations contained therein. However, it is important to note that Lafarge's misrepresentation claims do not necessarily rely on affirmative misrepresentations. "Concealment of a fact which one has a duty to disclose properly serves as a substitute element for a false and fraudulent misrepresentation." Osterberger, 599 S.W.2d at 227. Because Defendants, as real estate brokers, had a duty to disclose all adverse material facts, Missouri Revised Statute § 339.730(1), their failure to disclose the Strother District, if found to be material, constitutes its own misrepresentation without reliance on any other representation or statement.

actually known or that should have been known" by the broker. Mo. Rev. Stat. § 339.730(1)(3)(c). An adverse material fact is defined as "a fact related to the property not reasonably ascertainable or known to a party which negatively affect the value of the property." Mo. Rev. Stat. § 339.710(1).

As with its other claims, Lafarge alleges Defendants breached their fiduciary duty by failing to disclose the existence of the Strother District. The district court granted summary judgment on Lafarge's breach of fiduciary duty claim, once again concluding the Strother District was not an adverse material fact. For many of the same reasons as before, we conclude there is a factual dispute whether the Strother District was a material fact. A reasonable person could conclude that an objective business would have found the Strother District important in making its decision, and it is safe to say the Strother District more than likely negatively affected the value of the property. Again, the fact that Lafarge may have mistakenly believed the Strother District to be unimportant goes to causation, not materiality.[6] For this reason, we reverse the district court's grant of summary judgment in favor of Defendants on Lafarge's breach of fiduciary duty claim.

*Negligence*

To prevail on a negligence claim in Missouri, the plaintiff must prove: "1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; 2) the defendant's failure to perform that duty; and 3) the plaintiff's injury was proximately caused by that failure." Smith v. Dewitt & Assoc., Inc., 279 S.W.3d 220, 224 (Mo. Ct. App. 2009). A duty arises when "there is a foreseeable likelihood that particular acts or omissions will cause harm or injury," and the scope of that duty "is measured by whether a reasonably prudent person would have anticipated danger and provided against it." Id. (internal quotation marks and citation omitted).

---

[6]Again, we do not address causation or any other element of Lafarge's breach of fiduciary duty claim not addressed by the district court. See Schweiss, 922 F.2d at 476.

-14-

The district court granted summary judgment in favor of Defendants because it concluded Defendants did not breach any duty owed to Lafarge. We disagree. First, Missouri courts have long recognized a real estate broker owes a duty of care towards his clients, which requires him "to exercise reasonable skill, diligence, and care in the handling of business given over or entrusted to the broker." Am. Mortgage Inv. Co., 671 S.W.2d at 293. Courts also recognize such a standard is "dependent upon the nature and extent of the job undertaken by the broker." Id. Whether that duty is breached in a particular case is a question of fact for the jury to decide. Pyle v. Layton, 189 S.W.3d 679, 685 (Mo. Ct. App. 2006). Therefore, "[s]ummary judgment is frequently inappropriate in a negligence case particularly where the issue is whether there are facts upon which the trier of fact could find a breach of an admitted or otherwise established duty." Lumbermans Mut. Cas. Co. v. Thornton, 92 S.W.3d 259, 263 (Mo. Ct. App. 2002).

In light of the evidence, there is an issue of fact whether Defendants exercised reasonable care in handling Lafarge's business. In light of Defendants agreeing to handle all of Lafarge's business with respect to the relocation of its headquarters, a factfinder could conclude a reasonably prudent person would have disclosed the existence of the Strother District to Lafarge. First, Discovery Group had little reason to believe the Strother District would have been of no consequence to Lafarge. Lafarge never told Defendants that it did not intend to pay sales tax at its new location.[7] More importantly, even if Defendants had reason to believe the Strother District may be inconsequential to Lafarge, they have yet to provide a persuasive justification for not disclosing the information. Informing Lafarge of the Strother

_____

[7]Although Defendants are correct in pointing out Lafarge represented that its headquarters would be used for office space and research, this does not necessarily preclude the possibility that sales taxation rates would be applicable. It is possible, as this case demonstrates, that work undertaken in an office could incur sales tax. In fact, when Lafarge sent Defendants a spreadsheet of the individuals who would be working in the new headquarters, it identified fifteen people under the category "RM Sales."

-15-

District would have been very easy, and would not have imposed upon the Defendants any additional burdens or costs. If Defendants truly believed the Strother District was immaterial to Lafarge, they could have easily disclosed its existence and then proceeded to closing with Lafarge's blessing. Thus, a factfinder could conclude a reasonable person/company in Defendants' position would have disclosed the Strother District to Lafarge. The district court erred in finding as a matter of law that Defendants did not breach their duty.

The district court also erred in holding that, even if Defendants did breach their duty, such breach was not the proximate cause of Lafarge's injuries. According to the district court, the cause of Lafarge's damage was the letter by the Missouri Department of Revenue concluding Lafarge conducted sales at its headquarters. The district court erred, however, because the test "of proximate cause is whether the negligence is an efficient cause which sets in motion the chain of circumstances leading to the plaintiff's injuries or damages." English v. Empire Dist. Elec. Co., Inc., 220 S.W.3d 849, 856 (Mo. Ct. App. 2007). Thus, a "defendant's negligence does not need to be the sole cause of the injury, but rather need only be one of the efficient causes thereof without which the injury would not have occurred." Id. Proximate causation is satisfied when "the purported intervening cause occurs in combination or concurrent with earlier negligence, or where the intervening act itself constitutes an act . . . which is a foreseeable consequence of the original act of negligence." Id. "The test is not whether a reasonably prudent person would have foreseen the particular injury, but whether, after the occurrences, the injury appears to be the reasonable and probable cause of the act or omission of the defendant." Simonian v. Gevers Heating & Air Conditioning, Inc., 957 S.W.2d 452, 475 (Mo. Ct. App. 1997).

We conclude that if Defendants are found to be negligent in failing to disclose the Strother District, such negligence was the proximate cause of Lafarge's injuries. See Payne v. City of St. Joseph, 135 S.W.3d 444, 451 (Mo. Ct. App. 2004) (noting

that proximate causation is generally a question of law).[8] Because Lafarge was required to pay the special tax imposed by the Strother District it was also a reasonable and probable consequence of the Defendants' failure to inform Lafarge of the Strother District. Although Lafarge had not in the past paid sales tax from the jurisdiction of its headquarters, its failure to do so was based on an incorrect interpretation of the law. It is foreseeable that Lafarge would eventually have its understanding of the law corrected and thus begin paying the special sales tax imposed by the Strother District. See Jones v. Tritter, 938 S.W.2d 165, 168 (Mo. Ct. App. 1998) ("It is only necessary that the party charged knew or should have known there was an appreciable chance some injury would result."). Notably, the letter from the Department of Revenue did not constitute a change in the law – which would allow Defendants to argue that such a change was not foreseeable – but simply an application of existing law to the circumstances of this case. Therefore, Lafarge paying the special sales tax imposed by the Strother District was a reasonable, probable, and foreseeable consequence of Defendants not disclosing the Strother District to Lafarge.

*Rescission*

In its final claim, Lafarge seeks to rescind the lease it entered into with Explorer. Lafarge alleges that because the lease was induced through the fraudulent representations and omissions of the various Defendants, it is entitled to rescission. Missouri courts have held that "rescission may be based upon actual fraud, i.e., a false representation of a material fact, made with the knowledge of its falsity and with the

---

[8]This presupposes that Defendant's negligence is found to be the cause in fact, or "but for" cause, of Lafarge's injuries, i.e., Lafarge would have chosen a different site for its headquarters had Defendants acted in a reasonably prudent manner. See Simonian, 957 S.W.2d at 474-75 (explaining the differences between "but for" causation and proximate causation; a plaintiff in a negligence action must demonstrate both). The district court did not address causation in fact, and the parties do not argue causation in fact on appeal. Therefore, we decline to address this element of Lafarge's negligence claim. See Scweiss, 922 F.2d 476.

intent to deceive." <u>Osterberger</u>, 599 S.W.2d at 227. In addition, "a party to a contract can rescind if the contract was induced by an innocent misrepresentation." <u>Groothand v. Schlueter</u>, 949 S.W.2d 923, 927 (Mo. Ct. App. 1997). Thus, "[t]here is no requirement that the party prove the speaker's knowledge of the falsity or intent to cheat or defraud." <u>Id.</u>

The district court granted summary judgment against Lafarge on this claim, concluding, based on its other rulings, Lafarge could not demonstrate the lease was based on a misrepresentation of a material fact. For the reasons previously explained, this ruling was incorrect; there is a genuine issue of fact whether the Strother District was a material fact. Therefore, we reverse the district court's ruling with respect to Lafarge's rescission claim.[9]

## III

For the aforementioned reasons, we reverse the district court's order with respect to Lafarge's claims against Defendants and remand for further proceedings.

_____

---

[9]Defendants also argue that Explorer, the lessor, cannot be held liable for the misdeeds of other parties (i.e., Discovery Group, Tharpe, and Pope), and that Lafarge failed to seek rescission in a timely manner. The district court did not address these arguments. Because we believe it would be beneficial for the district court to address these issues in the first instance, we decline to affirm on these alternative theories. <u>Schweiss</u>, 922 F.2d at 476.