PAUL E. WOLFF SHIRT COMPANY, Appellant, v.
ALBERT SACKS, Respondent.

St. Louis Court of Appeals. Argued and Submitted June 4, 1914.
Opinion Filed June 20, 1914.

1. APPELLATE PRACTICE: Involuntary Reference: Scope of Review. In a case where there has been an involuntary reference, the appellate court will read all the testimony introduced, treating the action as one in equity.

2. PRINCIPAL AND AGENT: Action for Compensation: Sufficiency of Evidence. In an action for an accounting between a manufacturer of shirts and its traveling salesman, evidence *held* to support a finding of the referee that the agreement was, that the salesman was to receive a commission of eight per cent. on shirts of the price of more than $4.50 per dozen and six per cent. on shirts of the price of less than $4.50 per dozen.

3. ———: ———: ———. In an action for an accounting between a manufacturer of shirts and its traveling salesman, evidence *held* to support a finding of the referee that the manufacturer, in violation of the contract of employment, had sent other salesmen into the territory assigned to defendant, and that he was entitled to a commission on sales made by such salesmen in such territory.

4. ———: Right to Compensation. A traveling salesman, who, pursuant to his contract with a manufacturer, in good faith and without violation of any selling instructions, solicited and obtained orders from solvent customers, was entitled to his commission, although the manufacturer, because of a shortage of stock, was unable to fill the orders.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge..

AFFIRMED.

*G. T. Priest* for appellant.

*Manton Davis* for respondent.

When a party to a contract has done his full duty under the contract and his right to compensation for his duty done depends upon an act which the other contracting party must do, then such other party cannot rely on his own inability to perform to prevent the first party from recovering his compensation. This would be for one to take advantage of his own wrong. "A party to a contract, who by his own act prevents the happening of a condition is estopped thereafter to say that such condition has not happened." Lewis v. Life Ins. Co., 61 Mo. 534; Dobbins v. Edmonds, 18 Mo. App. 307; Pond v. Wyman, 15 Mo. 175; Turner v. Goldsmith, (1891) 1 Q. B. 544; Williams v. Bank of United States, 27 U. S. 96; Dill v. Pope, 29 Kan. 289; Taylor v. Morgan Sons Co., 124 N. Y. 184; Union Refining Co. v. Barton, 77 Ala. 148.

REYNOLDS, P. J.—Plaintiff is a manufacturer of shirts. Defendant was in its employ as a traveling salesman.

This action, originally for an amount claimed to be due plaintiff from defendant, finally took the shape of an action for an accounting between the parties. By the amended petition upon which the cause went to trial, it is claimed by plaintiff that defendant was employed by it as a traveling salesman to sell shirts manufactured by it, the contract entered into August 27, 1904, to go into effect October 1, 1904, and to terminate August 31, 1905. By the contract set up and pleaded by plaintiff, the plaintiff was to allow defendant a drawing account of an amount not to exceed an average of $300 per month, was to pay him a commission of six per cent on all shipments from sales made by him, and if it should appear at the end of the contract that defendant had earned more commissions than were necessary to cover the amounts of money drawn by him during the term of the agreement, the difference should be due and payable to him, whereas

if the account upon the books of plaintiff showed that defendant was indebted to plaintiff or had overdrawn his account, than he was to pay and immediately make good this difference. Claiming that defendant had drawn $3634.44, and that his commissions amounted to only $3035.57, plaintiff prayed judgment for the difference, with interest from August 31, 1905, and costs.

The answer, upon which the cause was finally determined, after a general denial, set up several counterclaims.

Under the first counterclaim defendant charged that his compensation or commission for sales in certain territory specified was to be eight per cent of the gross selling price on all shirts of the price of or more than $4.50 per dozen, and six per cent of the gross selling price on all shirts of the price of $4.50 per dozen or less, the percentage to be calculated on all shipments of orders from persons doing business in the territory assigned to defendant, whether the orders were taken by defendant or came by mail or were sold in plaintiff's place of business, except that no commissions were to be paid on goods shipped and not paid for by the purchasers, and that plaintiff had agreed that it would at all times be ready, able and willing promptly to make shipment of all orders taken by defendant under the terms of the contract and accepted by plaintiff. Alleging performance on his part, defendant avers that, under the terms of the contract, plaintiff had shipped shirts of the value of $38,708.18, on which defendant was entitled to a commission of eight per cent, and had actually shipped other shirts to the amount of $14,073.45, on which defendant is entitled to a commission of six per cent, defendant claimed that plaintiff was indebted to him in the sum of $3941.06.

As a second counterclaim, setting up what he claimed to be the contract for the payment of com-

missions as above, defendant claimed that notwithstanding the contract between it and the plaintiff by which he was to have the benefit of all sales in the territory assigned to him, plaintiff had ordered and permitted other salesmen to go into his territory and sell goods therein and thereby had deprived him of sales, the commissions on which, at the rates above stated, amounted to $184.35, which he had lost. That he had lost the further commission of $727.35 because of plaintiff failing to have on hand and ship to solvent customers with whom defendant had negotiated sales. That defendant had lost commissions to the amount of $370.32, by plaintiff allowing customers to countermand orders obtained by defendant, laying his damage under this counterclaim at the sum of $1282.02. The total of all the counterclaims set up by defendant amounted to $5223.48, for which, with interest and costs, he prayed judgment.

This was replied to and the cause coming on before the court, a reference was ordered.

The referee, having heard the testimony in the case, returned his report into court, recommending that plaintiff be denied a recovery upon its petition and that defendant be allowed a recovery upon its counterclaim against plaintiff in the sum of $800.23. Plaintiff in due time filed exeptions to this report which were overruled and filing a motion for new trial which was also overruled, duly perfected its appeal to our court.

This being a case involving an involuntary reference under the statute, we have, in accordance with the holding of our Supreme Court in cases of that kind, treating it as in cases in equity, read all the testimony. Without reciting or reproducing it, it is sufficient to say that on the evidence the referee found that the real agreement between the parties rested in part in writing and in part in parol, and that it is not denied that the contract as an entirety had in

contemplation the allowance to defendant of a commission of one per cent in addition to that stated in the written memorandum or contract pleaded by plaintiff to which we have referred. The referee states that the most serious controversy between the parties is with reference to the basis upon which defendant's commissions are to be computed, the plaintiff insisting that the defendant was to receive one per cent additional only to the six per cent mentioned in the memorandum, that is seven per cent, upon all orders for all classes of shirts obtained by him, accepted by the company, and by it shipped and paid for, or sold through him as above stated, defendant's contention being that his commissions were to be computed upon the basis of a classification of the selling prices by the company for its goods in force at the time when he entered its employ, as pleaded by him. The referee found that defendant's contention is sustained by evidence; that at the time of entering into this contract with defendant, plaintiff paid its traveling salesman a commission of five per cent upon all sales by them of such of its goods as sold at $4.50 per dozen or less and seven per cent upon sales of all goods in excess of that figure, and that the agreement of the parties was that defendant was to have an additional one per cent over these commissions, although he finds that the contract upon which plaintiff relies, and which was signed by both parties, is silent as to the existence of this classification, nor does it provide for the computation of defendant's commissions on such basis, the only reference to commissions being six per cent on all shipments made to any town in the territory described in the agreement, and which were paid for, defendant contending that this commission clause last above quoted was never observed nor adhered to by the company, and that both by its correspondence and dealings with defendant, it had expressly and unqualifiedly

waived and ignored it.  So holding, the referee finds that the commissions to which defendant was entitled on that basis, including omitted credits, amounted in the aggregate to the sum of $3310.68, and he allows this amount on the first counterclaim.

On the second counterclaim, which relates to the violation of the exclusive right of defendant to sell in certain territory, the referee finds that this stipulation was violated and under this counterclaim he allows defendant a credit of $184.51.

The next contention disposed of by the referee under this second counterclaim is as to the allowance of commissions to defendant on what are called "mail orders" and "house orders," taken, that is, orders accepted and filled by plaintiff, the credit for commissions on which is claimed by defendant.  Finding plaintiff had received and filed such orders which had come in from the customers of defendant, or from his territory, for which defendant was entitled to credit, he allows defendant a commission on them, in the aggregate, of $135.18, disallowing the claim of defendant on this account for a larger sum claimed.

He further allows defendant a credit of $804.30 on account of commissions upon orders obtained from him from divers solvent customers, but which orders plaintiff was unable to and did not fill "because of its inability to keep the same in stock, although said customers were ready, able and willing to accept and pay for these orders."

He disallows defendant's claim for countermanded orders, that is, orders obtained by defendant but afterwards countermanded by the customers.

Summing up, the referee allows defendant a total credit in the sum of $4434.67, finds that he has received commissions amounting in the aggregate to $3634.44, and that there is now due and owing defendant from plaintiff the sum of $800.23.  That is the

amount for which he recommends judgment and that was the amount of judgment.

The learned counsel for appellant makes two assignments of error. First, that upon the whole record plaintiff should be allowed a judgment against defendant in the sum of $598.87, and that defendant should be denied a recovery upon his counterclaim. As before said, we have read over the testimony with great care and are entirely satisfied that the conclusion arrived at by the referee is amply supported by the testimony in the case, so that this assignment of error is untenable. .

The second error assigned is to the allowance to defendant of commissions upon all orders solicited by him and sent in to the plaintiff company which plaintiff company could not fill because it did not have the goods on hand with which to manufacture the articles called for by the orders. Disposing of this point in his report, the referee holds that in the light of the testimony in the case defendant is entitled to these commissions. Of this the referee says: "To hold otherwise, would, I believe, be subversive of fairness and justice and enable plaintiff to take advantage of its own wrong. The plaintiff's ability to fill defendant's orders is no less important to him, than is defendant's ability to obtain said orders to the plaintiff. The employer's ability to fill such orders, is or ought to be implied, and I find abundant legal authority to that effect. [Lewis v. Atlas Mutual Life Ins. Co., 61 Mo. 534.] In the present instance defendant, in good faith and without violation of any selling instructions solicited and obtained orders from divers customers who were ready, willing and able to pay for the goods. It is not contended that plaintiff's failure to execute these orders was due to any lack of confidence in the customer's financial responsibility."

We agree to this concise statement of the law as sustained, not only by our Supreme Court in Lewis

v. Atlas Mutual Life Ins. Co., supra, but by other authorities cited by counsel for respondent, namely, Pond v. Wyman, 15 Mo. 175; Dobbins v. Edmonds, 18 Mo. App. 307; Williams v. Bank of the United States, 27 U. S. 96; Taylor v. Enouch Morgan's Sons Co., 124 N. Y. 184; Turner v. Goldsmith, 1 Q. B. (1891) 544. The learned counsel for appellant, referring to most, if not all of these cases, claims that they not only do not support the referee but that a careful consideration of them leads to a contrary conclusion. We do not agree to this. We think that they are in line with the Lewis case and with the holding of the referee.

Finding no reversible error the judgment of the circuit court in approving the finding of the referee, that judgment is affirmed. *Nortoni* and *Allen, JJ.,* concur.