Eileen MATHEWS, Plaintiff-Respondent,

v.

KNOLL ASSOCIATES, INC., a Corporation, Defendant-Appellant.

No. 31824.

St. Louis Court of Appeals.

Missouri.

March 16, 1965.

Switzer, Barnes & Toney, Thomas E. Toney, Jr., St. Louis, for defendant-appellant.

Lewis, Rice, Tucker, Allen & Chubb, Robert S. Allen, St. Louis, for plaintiff-respondent.

SAMUEL E. SEMPLE, Special Judge.

This is an action brought by plaintiff Eileen Mathews, respondent herein, for recovery of commissions under a contract of employment between plaintiff and defendant Knoll Associates, Inc., appellant herein. The cause was tried before the court and resulted in a finding and judgment for plaintiff against defendant in the amount of $1,964.15 plus interest. From this judgment defendant has perfected an appeal to this court.

Defendant Knoll Associates, Inc., which was engaged in the business of manufacturing and selling furniture and fabrics, employed plaintiff, Miss Eileen Mathews, for the period from 1958 to December 31, 1961. During the years 1960 and 1961, Miss Mathews was employed under written contract as the Regional Manager of the business in St. Louis. In the latter part of 1961 defendant offered plaintiff a new contract for the years 1962 and 1963 which called for a lower salary and lower commissions. In December of 1961 plaintiff rejected the new contract proposed by the defendant and her employment terminated at the expiration of her contract on December 31, 1961.

Miss Mathews' contract with Knoll for the years 1960 and 1961 provided for a salary of $8,000 plus commissions based upon sales in excess of specified quotas. She was paid her salary for 1961 and was paid commissions on all sales in excess of the quota on which shipments were made by Knoll prior to December 31, 1961. Miss Mathews claimed she was entitled to commissions on additional sales obtained by her which were confirmed by Knoll in 1961, but on which the merchandise was not shipped until after December 31, 1961. The defendant received payment in full for the merchandise invoiced and shipped. The parties stipulated that the amount of commissions in dispute was $1,964.15. The basic question raised in the case is whether plaintiff earned her right to commissions on sales obtained in 1961 even though the defendant shipped and received payment for the goods in 1962.

The pertinent portions of the written contract are as follows:

"1. Regional Managers subject to this plan will be paid a basic annual salary and commissions based upon sales.

\*　　\*　　\*　　\*　　\*　　\*

"3. Commissions based upon sales will be at the rates set forth in '4', will

be computed in accordance with the principles set forth in '5', and will be paid at the times set forth in '6'.

"4. Commissions based upon sales will be at the following rates:

\* \* \* \* \* \*

"5. Commissions based upon sales will be computed in accordance with the following principles:

"A. Sales subject to commission will be:

(a) Net sales of merchandise bearing the 7½% commission rate credited to your territory in excess of three-fourths (¾ths) of your territory's quota for sales of merchandise bearing the 7½% commission rate.

\* \* \* \* \* \*

"B.) 'Net sales' means invoiced shipments of merchandise less returns, allowances, credits and discounts (except cash discounts for customers' prompt payment) and exclusive of sales or other taxes.

\* \* \* \* \* \*

"6. Commissions based upon sales will be paid at the following times:

\* \* \* \* \* \*

"9. Upon termination of Knoll's employment of a Regional Manager, salary and commissions shall be computed to the date of termination of employment and paid within 15 days thereafter. \* \* \* No commission or compensation whatsoever shall be paid by Knoll on account of sales made to customers on or after the date of termination even though such sales relate to orders confirmed prior to the date of termination. After termination of employment, Knoll shall have the right to continue to engage in business with any and all accounts without any liability and free from the payment of any compensation with respect thereto."

The trial court in substance held in its findings that the contract was not clear and unambiguous and applied the rule that such a contract prepared by the defendant must be construed and interpreted adversely to the defendant on all points of ambiguity; that "The fair and reasonable interpretation of this contract is that the word 'sales' should be construed in accordance with its usual and ordinary meaning for the purpose of a salesman's right to commissions \* \* \*"; that plaintiff was entitled to commissions on sales which were made and confirmed by defendant during the period of the contract; that the definition of net sales in Paragraph 5–B was merely to exclude the possibilities of defendant being required to pay commissions on merchandise never shipped to customer or on merchandise which was later returned or on merchandise on which an allowance, credit or discount was granted; that the provisions of Paragraph 5–C indicating the date of crediting net sales on the Regional Manager's account to be the date of shipments showing on the invoice was to be properly construed as indicating in which quarter the commissions were to be paid as provided in Paragraph 6 and that it would not be just to construe this provision as making the shipment date equivalent to the sale date; that the provisions of Paragraph 9 that no commission shall be paid on sales made "to customers on or after the date of termination even though such sales relate to orders confirmed prior to the date of termination \* \* \*" does not refer to shipments after the date of termination but to sales made after date of termination; that the words "relate to" merely mean that the later sales have a relationship with orders confirmed and sales made prior to the date of termination.

The defendant contends that the plaintiff is precluded from receiving commissions on orders not invoiced and shipped until after the date of termination of the contract even though the orders were obtained and confirmed prior to the termination because of the specific provisions in Para-

graph 9 of the contract that: "* * * No commission or compensation whatsoever shall be paid by Knoll on account of sales made to customers on or after the date of termination even though such sales relate to orders confirmed prior to the date of termination. * * *" Defendant argues that the contract in clear and definite terms defines "sales" as meaning "net sales" (Section 5A) which are further defined as "* * * invoiced shipments of merchandise * * *" (Section 5B) and therefore under the specific provisions of the contract, the event which determines the earning of commissions by plaintiff is the shipment of merchandise by defendant on invoice. The defendant further argues that while in the case of the typical salesman, the taking of an order may be the commissionable event, however, in this case, the contract in clear and unambiguous language provided that invoiced shipments of merchandise would be the event which determines the earning of commissions and that the express provision of the contract must control, citing Baldwin v. Corcoran, 320 Mo. 813, 7 S.W.2d 967; and when the language of a contract is plain there can be no construction because there is nothing to construe, Hahn v. Forest Hills Construction Co., Mo.App., 334 S.W.2d 383, 385, and cases therein cited; and that a court should not and cannot, now reformulate the contractual agreement voluntarily arrived at between the parties, Chicago R. I. & P. Ry. Co. v. Maryland Casualty Co., 8 Cir., 75 F.2d 596.

We cannot agree with defendant's contention that the contract is so clear and unambiguous as not to require construction of its terms. The contract repeatedly uses the phrase "commissions based upon sales" (Paragraphs 1, 3, 4, and 5) and in Paragraph 9 uses the phrase "* * * commission or compensation * * * on account of sales * * *," all of which refer to the payment, rates and the method of computing commissions, but there is no provision to be found in the instrument which sets out or defines what services must be done to earn a commission based on sales or when such services need be performed.

■ A cardinal rule of construction of a contract is that the intention of the parties must be ascertained and given effect and that such intention of the parties must be ascertained from within the four corners of the written instrument and the surrounding circumstances and conditions. Warnecke v. Rabenau's Estate, Mo.App., 367 S.W.2d 15, 18. In this case a part of plaintiff's duties as Regional Manager for defendant was to sell defendant's merchandise and for her services as a saleswoman she was to be paid commissions. She had no control or responsibilities with respect to the manufacture or the filling of orders. These functions were performed by other employees of defendant.

A "sale" insofar as a salesperson is concerned is the obtaining of an order, and that is what he is employed to do and that is what he is paid commissions for doing. It has been held by this court that a salesman is entitled to a commission if he was the procuring cause of a sale. Weisels-Gerhart Real Estate Co. v. Epstein, 157 Mo.App. 101, 107, 137 S.W. 326; and that it is not essential to the right to recover a commission to show the sale was completed within the time prescribed in the contract of employment provided that it sufficiently appears that the agent initiated the transaction of purchase within the prescribed time and may therefore be regarded as the procuring cause, Cole v. Crump, 174 Mo.App. 215, 220, 221, 156 S.W. 769; and this court has also affirmed findings that a salesman was entitled to commissions on bona fide orders obtained even though in those cases the orders were not delivered. Porter v. Fickenwirth, Mo. App., 217 S.W.2d 738, and Paul E. Wolff Shirt Co. v. Sacks, 184 Mo.App. 157, 168 S.W. 641. Here the plaintiff had obtained the orders and the orders were confirmed by defendant prior to the termination of the contract and plaintiff had thus accomplished all that she had within her power

to do to earn her commissions. The completion of the transaction thereafter by the defendant was not material to the question of plaintiff earning her commissions except that under the express provisions of the contract there could have been events which operated as conditions subsequent to divest her of her right to commissions, such as cancellation of the order by defendant, return of the merchandise or nonpayment by the customer. Here, under the facts stipulated, the defendant did invoice and ship the merchandise and was paid in full by the customers.

Section 5 of the contract relied on by defendant does not define "sales" referred to in Paragraphs 1, 3, 4, and 9 of the contract with reference to what plaintiff must do to earn a commission or spell out when such earned services should be performed. Section 5 enunciates principles upon which commissions based upon sales will be computed and subparagraph B thereof in defining "net sales" as meaning invoiced shipments of merchandise is a definition for the purpose of fixing the amount of sales as the basis for computing commissions. Subparagraph 5C deals with crediting sales in the territory but does not refer to when the commissions are earned.

Defendant contends that the provision in Paragraph 9 that " * * * No commission or compensation whatsoever shall be paid by Knoll on account of sales made to customers on or after the date of termination even though such sales relate to orders confirmed prior to the date of termination * * *" clearly indicated that the word "sales" refers to something other than confirmed orders. Defendant argues that the trial court's interpretation that the word "sales" in effect means confirmed orders and that the reference was to "supplementary sales" or "related sales" is a distortion of the clear meaning of the clause " * * * even though such sales relate to orders confirmed prior to the date of termination * * *" and that it creates a redundancy since the last sentence of Paragraph 9 provides for supple-

mentary or related sales as follows: " * * * After termination of employment, Knoll shall have the right to continue to engage in business with any and all accounts without any liability and free from the payment of any compensation with respect thereto."

These contentions of defendant cannot be sustained. The clause in Paragraph 9 does not deprive plaintiff of commissions on sales made to customers on orders obtained before the termination of the contract but does exclude commissions on sales made after the termination which "relate to orders" obtained prior to termination. In this case plaintiff makes no claim for commissions on sales which "relate to prior orders" but her claim is based on orders obtained in 1961 and on those orders, not on "related orders."

Plaintiff presented evidence that much of the business was with large customers, such as architectural firms who handled large jobs and that the main volume of business for the show room such as plaintiff managed came from three or four good customers. That repeat business would come from these customers on different jobs or on the same job as the work progressed.

We believe the trial court properly construed Paragraph 9 when it found: " * * * This provision does not refer to shipments after date of termination but to sales made after date of termination. It can only be properly construed to mean in effect supplementary sales of merchandise identical with prior sales. The words 'relate to' merely mean that the later sales have a relationship with orders confirmed and sales made prior to the date of termination" and the trial court properly construed the last sentence of Paragraph 9 with reference to "accounts" when it found: "The last sentence in Paragraph 9 has the function of protecting defendant from any obligation to pay commissions on sales made after termination of the contract to accounts whose interest had been aroused

during the time of the contract but to whom the particular sale had not been made."

■ Some of the fundamental rules of construction of a contract to be used in examining the phraseology of a particular instrument are set forth in Veatch v. Black, 363 Mo. 190, 250 S.W.2d 501, 507:

"A contract of doubtful meaning will be given a construction which will make it fair and reasonable between the parties and will not give one party an unfair advantage of another. * * * Consideration is given to the contract as a whole and the fundamental rule for construing its language is to ascertain and give effect to the intention of the parties. * * * Greater regard is given the clear intention of the parties than the particular words used in attempting to express it."

Reading the contract as a whole it is clear that the provisions for payments of commissions based upon sales by defendant was for the purpose of encouraging plaintiff to obtain sales of defendant's merchandise. It is also obvious that plaintiff never intended that she would perform services for which she would not receive compensation under the contract. To interpret the contract as defendant contends would deprive plaintiff of her commissions on orders which she obtained for the defendant by her own efforts made prior to the termination of the contract.

■ We believe that the trial court properly made a finding that: "The fair and reasonable interpretation of this contract is that the word 'sales' should be construed in accordance with its usual and ordinary meaning for the purpose of a salesman's right to commissions. Apparently defendant desires to get the benefit of the salesman's service rendered during the effective period of the contract, without having to pay the usual percentage of commissions. The contract cannot fairly be construed as giving defendant the unilateral right to determine whether there shall be payment of commission by its control of the date of shipment."

Defendant also contends that the trial court's construction of the contract works a substantial injustice to the defendant while giving plaintiff "a windfall" in the amount of $1,964.15. This contention is apparently based on the theory that plaintiff got a credit in 1961 for shipments of orders obtained in 1960 and thus allows plaintiff to include sales over a period greater than twelve months in determining by how much she exceeded her quota for the year. This contention is without merit. There was no continuation of employment after December 31, 1961. It can hardly be said that plaintiff would be receiving "a windfall" by receiving commissions on services plaintiff had earned by obtaining confirmed orders prior to the termination of the contract. To say otherwise would be to grant defendant "a windfall" of an additional $1,964.15 in profit on confirmed orders obtained and earned by plaintiff during the period she was employed.

The trial court correctly construed the contract. The judgment should be and is affirmed.

RUDDY, P. J., and WOLFE, J., concur.