Wayne BURRUS, Appellant,

v.

HBE CORPORATION, Respondent.

No. ED 87786.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 24, 2006.

Jerome J. Dobson, Jonathan C. Berns, St. Louis, MO, for appellant.

Bradley Hiles, Randall Thompson, St. Louis, MO, for respondent.

KENNETH M. ROMINES, Judge.

### Introduction

Appellant Wayne Burrus ("Burrus") appeals from the judgment of the Circuit Court of St. Louis County, the Honorable David Lee Vincent, III presiding, in which the court granted summary judgment in favor of Respondent HBE Corporation ("HBE"). For the reasons set forth below, we reverse and remand in part and affirm in part.

### Factual and Procedural Background

The record below reveals that Burrus was an employee of HBE from 1989 until he was fired in 2001. Burrus was employed by HBE's hospital building division, and was one of the company's salesmen, working in its west coast territory. Burrus' primary job responsibility was to initiate and cultivate relationships with potential clients/customers seeking HBE's hospital design and building services. Because of the nature of Burrus' role as a salesman, he was only involved in the initial stage of the overall hospital design process: Burrus would establish the relationship with the customer, determine their initial specifications, and submit a proposal, internally called a "blue memo," to HBE's president and CEO, Fred Kummer ("Kummer") for review. If Kummer was interested in pursuing a relationship with the potential customer, other company personnel, including architects and engineers, would further develop the relationship. The relationship would ultimately be consummated when HBE and the customer signed a binding contract for HBE's services. However, Burrus' work with any prospective customer was generally complete when he submitted a "blue memo" to Kummer.

There is no dispute that Burrus was an at-will employee with HBE. However, Burrus was paid a commission, in addition to a base salary, for any hospital projects that came to fruition as a result of his work in establishing a customer relationship. The commission agreement was memorialized in a written Sales Compensation Plan ("Plan"), and applied to all of HBE's sales force. The Plan, although not the most thorough or well-crafted of legal documents, was rather simple and straightforward, and provided that a salesperson would be paid a specified percentage (ranging from .25% to 9/16%) of the final

contract price for any design work HBE agreed to perform for a customer. The Plan was in effect when Burrus was fired.

The Plan also had two "Notes" that are relevant to the central issue in this case. The first note specifically defined a "contract" as: "a document executed by both parties and which legally binds both parties to its terms and conditions and which contain [sic] no contingencies of any kind. Money has been received and the contract must be clearly in the possession of HBE to be considered a binding contract for purposes of this commission plan." The second note provided that, "[a] salesperson must be in the employment of the Company at the time the commission is earned, otherwise no commission is due." The Plan had no other definitions or explanations.

Burrus was fired from his sales position in 2001, and he alleged in his petition that he had previously submitted six "blue memo" proposals that eventually resulted in binding contracts for HBE. Burrus further alleged that, but for his firing, these contracts would have generated substantial commissions for him. However, HBE never paid Burrus the commissions on these contracts, arguing that Note 2 of the Plan relieved it of any liability to pay these commissions because Burrus was not employed by HBE at the time the contracts were signed, notwithstanding the fact that the blue memos were submitted during his employment.

Following HBE's refusal to pay the disputed commissions, Burrus filed a three-count suit in the circuit court. In his first count, Burris alleged that HBE breached its employment contract by refusing to pay him commissions on the six "blue memos" he submitted before he was terminated, and which ultimately resulted in commis-sion-generating contracts after his termination. Burrus' second count was a *quantum meruit* claim, and he argued that he was entitled to the reasonable value of the services he performed for HBE. Burrus' third count was a claim for damages under Missouri's "Merchandising Practices Sales Commissions" act, Section 407.912 RSMo. (2000). Shortly after Burrus filed his petition, HBE moved for summary judgment with respect to all three counts of Burrus' petition, and the trial court granted the motion.[1] This appeal followed.

### *Standard of Review*

As this case involves our review of the trial court's grant of summary judgment, we must consider the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts established by affidavit or other proof in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* We accord the non-moving party the benefit of all reasonable inferences from the record below. *Id.* The propriety of summary judgment is purely an issue of law, and thus, our review is *de novo. Id.* Summary judgment is appropriate where the moving party establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.* at 378.

### *Discussion*

Burrus brings two claims of error. First, Burrus argues that the trial court erred in granting HBE's motion for summary judgment with respect to his breach

---

1. Burrus did not oppose HBE's motion regarding the third count of his petition, and does not now appeal the trial court's grant of summary judgment regarding this count.

of contract claim because a genuine issue of material fact existed regarding whether, under the Plan, Burrus earned the commissions at issue before he was terminated. Second, Burrus argues that the trial court erred in grating summary judgment with respect to his *quantum meruit* claim because a genuine issue of material fact existed regarding whether he could prove the elements of this claim. We agree with Burrus on the first point but disagree on the second.

### I. Breach of Contract Claim

The central issue in Burrus' breach of contract claim is whether, under the Plan, he is entitled to the commissions at issue. This question will be answered by determining the meaning of the term "earned," as it is used in Note 2 of the Plan. HBE's primary argument is that this Court need look no further than the four corners of the Plan document in determining that no commissions are due, and specifically points to the plain language of Note 2, which states that "[a] salesperson must be in the employment of the Company at the time the commission is earned, otherwise no commission is due." HBE argues that, under a plain reading of Notes 1 and 2, a commission is "earned" only when a final contract is signed, and not before. Therefore, since Burrus was not employed by HBE when the contracts in question were signed, no commissions are due.

Conversely, Burrus argues that he earned the commissions at issue when he submitted the blue memos to Kummer, thus completing his portion of the work regarding the transactions at issue. Burrus further argues that since he would have had no further involvement in the client relationship after the submission of the blue memos even if he had been em-

ployed at the time the contracts were signed, the commissions were "earned" when his work was completed, not when the contracts were signed.[2] Burrus points out that since the term "earned" is not defined in the Plan, it is ambiguous as it is used in Note 2. Burrus also suggests that HBE could have easily drafted the Plan to provide that a salesperson must be employed by the company at the time a contract is *signed* in order to earn a commission. Accordingly, Burrus argues that because HBE failed to do so, and his interpretation of the contract is a reasonable one, an ambiguity exists which should, at the very least, be deemed a material factual question precluding summary judgment. In the alternative, this ambiguity should be construed in his favor, given that HBE drafted the contract.

Although we agree with Burrus' position that the term "earned," as it is used in Note 2, is ambiguous, thus creating a genuine issue of material fact precluding a grant of summary judgment, we are not prepared to strictly construe the contract in favor of Burrus. Rather, the following specific factual question remains to be determined by the trier-of-fact: whether the Plan requires that a salesman be employed when a final contract is signed in order to "earn" a commission, or in the alternative, whether the Plan merely requires that a salesperson complete his portion of the work with a given customer (i.e., by submitting a blue memo), even though the final binding contract may not be signed until well after his employment has terminated.

■■■■ As our starting point, we note that "[t]he cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that

---

**2.** Burrus acknowledges that the commissions in question were not *payable,* pursuant to

Note 1, until after the contracts were actually signed.

intention." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). If a contract contains no ambiguities, then the intent of the parties is to be gathered from the contract alone. *Id.* Therefore, a court will not "resort to construction where the intent of the parties is expressed in clear and unambiguous language...." *Id.* However, where the contract is ambiguous and unclear, a court may resort to extrinsic evidence to resolve an ambiguity. *Id.* A contract is ambiguous when "it is reasonably susceptible ... [to] different constructions." *Id.* However, a contract is not rendered ambiguous "by the fact that the parties do not agree upon the proper construction to be given it." *Id.* In determining whether a contract term calls for construction, we must consider the entire contract. *Id.* Furthermore, we must presume that the intent of the parties is "expressed by the natural and ordinary meaning" of their language. *Id.*

In this case, we find that the term "earned" is ambiguous because the parties have presented two reasonable and plausible constructions for this term in the given context. HBE argues that its construction is the more well-reasoned one because it cannot be expected to pay commissions indefinitely on work performed by employees who have long since left the company. Accordingly, it added Note 2 to limit its liability for commissions to contracts signed during a salesperson's actual employment with the company. On the other hand, Burrus argues that his construction of the contract is reasonable because the work required to earn a commission is limited to the initial stages of the client relationship, and final contracts are often signed years later. However, this fact does not diminish the value of the work he performed for HBE, nor does it extinguish his reasonable expectation, under the Plan, to be paid for this work. Thus, Burrus argues that since he performed his part of the bargain and did everything possible to earn the commissions at issue, he is now entitled to them, notwithstanding note 2.[3]

In support of his position, Burrus primarily relies on *Mathews v. Knoll Associates*, 388 S.W.2d 529 (Mo.App.1965), a case with facts very similar to this one. In *Mathews*, this Court found that an employer had improperly withheld payment of commissions to one of its salesmen, where one of the key terms in the parties' employment contract was ambiguous. *Id.* at 534. The employee had brought suit against her employer seeking payment of commissions on orders she submitted prior to her termination, but which were not shipped until after her termination. *Id.* at 530. Section 9 of the contract specifically provided that commissions would not be paid "on account of sales made to customers on or after the date of termination even though such sales relate to orders confirmed prior to the date of employment." *Id.* at 531. The employee argued that the sales were completed, thus establishing her right to a commission, when she submitted an order and the order was confirmed by the employer. *Id.*

At issue was the construction of the term "sales." Since the contract failed to define the term, and the parties presented reasonable alternative constructions, the court was forced to determine the parties'

---

3. We note that although the parties have presented reasonable and plausible explanations for their respective constructions of the term "earned," this Court does not adopt either as a factual matter on the limited record before us. That job, of course, is ultimately for the trier-of-fact after hearing all the relevant evidence. Rather, these arguments merely demonstrate the viability of a material factual dispute, and should be used as evidence at trial regarding the question of the parties' intent.

intent. The employer argued that no commissions were due, under the plain language of Section 9, until the orders were shipped, which in this case, did not occur until after the employee's termination. The employer also relied on another section of the contract which defined "net sales" as "invoiced shipments of merchandise." *Id.* at 532.

The Court, however, did not find the employer's arguments compelling, and specifically noted that, "since there is no provision . . . in the instrument which sets out or defines what services must be done to earn a commission based on sales or when such services need be performed," paragraph 9 was ambiguous, and should be construed against the employer. *Id.* In addition, the Court noted that the employee had "accomplished all that she had within her power to do to earn her commissions." *Id.* at 532–33.

In this case, like in *Mathews,* Burrus had done all that he possibly could to earn the disputed commissions when he was fired. Furthermore, although Note 2 explicitly provides that a salesperson must be *employed* by the company when the commission is earned, it does nothing to define *when* a commission is earned.[4] Thus, like the term "sales" in *Mathews,* the term "earned" is ambiguous here.

At oral argument, counsel for HBE posited that the term "earned" is given meaning by Note 1, which defines the term "contract" and specifically provides that "[m]oney has been received and the contract [is] . . . clearly in the possession of HBE to be considered a binding contract

for purposes of this commission plan." HBE's counsel also made much of the fact that the remainder of the Plan makes generous use of the term "contract," and argued that this fact should bear on our construction of the term "earned." According to HBE, the repeated use of the term "contract" in other portions of the contract implies that a binding contract must be in existence in order for a commission to be "earned" by a salesperson, notwithstanding the fact that "earned" is not defined at all in the contract.

Although we agree with HBE that we must construe this term in the context of the entire Plan, we disagree with its argument that the Plan's repeated use of the term "contract" compels us to adopt its construction of this pesky term. HBE's argument asks this Court to venture precariously far onto the proverbial limb of plausibility and reasonableness. HBE's argument, in essence, asks this court to deprive one of its best salesmen of the essential basis of the bargain between the parties by virtue of HBE's failure to clearly articulate this simple concept, all while keeping a substantial benefit for itself: the valuable hospital contracts that Burrus was instrumental in securing in the first place. Although it is true that the commissions Burrus is seeking are ·sizeable (approximately $633,000), this Court is mindful that Burrus' efforts in securing these contracts conferred a much more sizeable benefit on HBE: approximately $100 million in revenue. Thus, despite HBE's pleas, we will not venture onto that limb.

---

4. In its brief, HBE notes that under Missouri law, a contract term is not automatically rendered ambiguous simply because it is undefined. *See. e.g., Exec. Bd. of the Mo. Baptist Convention v. Carnahan,* 170 S.W.3d 437, 449 (Mo.App. W.D.2005). Although we agree with HBE on this general statement of the

law, we nonetheless find that this term, in this context, is ambiguous primarily because, first, it is capable of more than one reasonable interpretation,. and second, HBE could have easily written the Plan to reflect its proffered intent.

HBE also argues that Note 2 would be rendered meaningless if this Court adopts Burrus' construction of the term "earned." We disagree with HBE's argument because although we acknowledge that a reasonable trier-of-fact may find HBE's construction plausible, we also believe that a reasonable trier-of-fact may find another construction plausible. Thus, we do not adopt any specific finding in this regard, as we believe the answer to this question is a secondary factual issue that should be left to the trier-of-fact.[5]

As noted previously, if a contract is unambiguous we must determine the parties' intent from the contract alone. *J.E. Hathman,* 491 S.W.2d at 264. Furthermore, the intent of the parties is presumed to be expressed by the ordinary meaning of the contract's terms. *Triarch Industries, Inc. v. Crabtree,* 158 S.W.3d 772, 776 (Mo. banc 2005). However, if the terms of a contract are open to two interpretations, then the contract should be construed against the drafting party and in favor of the one who merely signed it. *Graham v. Goodman,* 850 S.W.2d 351, 355 (Mo. banc 1993). This canon of construction should only be applied, however, "as a last resort when there is no evidence showing the parties' intent." *Id.* at 356. Finally, we are instructed that when there is an ambiguity in a contract, a factual question exists regarding the intent of the parties. *Tuttle v. Muenks,* 21 S.W.3d 6, 9 (Mo.App. W.D.2000). Thus, where a factual issue exists regarding the parties' intent, a grant of summary judgment is erroneous. *Id.*

In this case, the trial court's grant of summary judgment in favor of HBE was erroneous because of the factual issue concerning the parties' intent on when a commission is earned. Furthermore, we note that because of the ambiguity concerning this critical term, the trial court shall, pursuant to *J.E. Hathman,* 491 S.W.2d at 264, permit the parties to present parol evidence concerning the intent of the parties in this regard. In the event that the parties do not present sufficient evidence of their intent, the trial court may, pursuant to *Graham,* 850 S.W.2d at 355, instruct the finder-of-fact to construe the contract against HBE. Point granted.

## II. Quantum Meruit Claim

In Burrus' second claim of error, he argues that the trial court erred in granting summary judgment with respect to his *quantum meruit* claim because a genuine issue of material fact existed regarding whether he could prove the elements of this claim. We disagree.

This claim of error is easily put to rest by this Court's recent ruling in *Mello v. Davis,* 182 S.W.3d 622 (Mo.App. E.D. 2005), in which we held that a plaintiff may not maintain an action in *quantum meruit* where the plaintiff's relationship with the defendant is governed by an existing contract. *Id.* at 623. Thus, we held that the plaintiff's sole theory of recovery must lie on the contract. *Id.* In this case, since Burrus' relationship with HBE is governed by an enforceable contract, albeit one with an ambiguous term, his sole avenue of recovery must also lie on that contract. Point denied.

## Conclusion

Since the trial court erred in granting summary judgment in favor of HBE, we reverse the trial court's judgment and remand for a trial on the factual issues dis-

---

5. We note that the answer to this question will provide further ammunition regarding the parties' arguments on the ultimate issue in this case: whether Burrus *earned* the commissions in question.

cussed herein, and otherwise in accordance with this opinion. However, we affirm the trial court's grant of summary judgment in favor of HBE regarding Burrus' *quantum meruit* claim.

REVERSED AND REMANDED in part and AFFIRMED in part.

GLENN A. NORTON, P.J., and LAWRENCE E. MOONEY, J., concur.