# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2686

_____

Al-Khaldiya Electronics and Electrical      \*
Equipment Co., W.L.L.,     \*
    \*
       Appellant,     \*
    \*
       v.     \*   Appeal from the United States
    \*   District Court for the
The Boeing Company; Boeing Global   \*   Eastern District of Missouri.
Sales Corporation; McDonnell Douglas  \*
Services; McDonnell Douglas     \*
Corporation; McDonnell Douglas     \*
Helicopter Corporation,     \*
    \*
       Appellees.     \*

_____

Submitted: March 10, 2009
Filed: July 7, 2009

_____

Before GRUENDER, ARNOLD, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Al-Khaldiya Electronics and Electrical Equipment Co. sued The Boeing Company and its subsidiaries for alleged contract breaches. The district court[1]

_____

[1] The Honorable Stephen N. Limbaugh, Sr., United States District Judge for the Eastern District of Missouri, now retired.

granted summary judgment to Boeing. Al-Khaldiya appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

This case involves a Boeing subsidiary, McDonnell Douglas Corporation (MDC), and its subsidiaries – Boeing Global Sales Corporation (formerly McDonnell Douglas International Sales Corporation) (MDISCO); McDonnell Douglas Services (MDS); and, McDonnell Douglas Helicopter Company.

In 1996, Al-Khaldiya and MDISCO entered into a representation agreement for January 22, 1996, to January 21, 1998. According to this 1996 agreement, Al-Khaldiya was to solicit and promote sales or leases of McDonnell Douglas products. As amended, the 1996 agreement tied compensation to the successful sale of AH-64 Apache helicopters. It also stated that Al-Khaldiya would be paid $100,000 for the successful sale and transfer of A-4 aircraft from the government of Kuwait to a party other than MDC. During the term of the 1996 agreement, Al-Khaldiya promoted Apache helicopters to Kuwait, but none was sold.

Sales of major military equipment by the U.S. to Kuwait are conducted between governments rather than as direct commercial sales. *See* **22 U.S.C. § § 2751-2796d**. Foreign Military Sales (FMS) procedures require that Kuwait express interest in an item by sending a Letter of Request (LOR) to the U.S. If the U.S. is willing to sell the item, it sends an offer in a Letter of Offer and Acceptance (LOA), which Kuwait may sign. The U.S. may then either procure the item from the manufacturer and resell it to Kuwait, or fill the order from inventory.

In 1996, Kuwait asked the U.S. Embassy to provide an LOA for 16 Apache helicopters, including 6 with Longbow Fire Control Radar. The U.S. issued an LOA for the helicopters, but without Longbow radar. Kuwait did not sign the LOA. Meanwhile, Al-Khaldiya facilitated the sale of the A-4 aircraft from Kuwait to Brazil.

-2-

In May 1998, Al-Khaldiya and MDISCO signed a new representation agreement, for June 18, 1998, to June 17, 2000. In 1999, the U.S. notified Kuwait that it authorized the release of the Longbow radar. Kuwait submitted an LOR for Apache helicopters in 2001 and signed an LOA in 2002. The U.S. purchased Apaches for Kuwait from McDonnell Douglas Helicopter Company in December 2002, after both representation agreements had expired.

On January 26, 2000, Al-Khaldiya and MDS entered a joint-venture agreement (JVA) to engage in the provision of Contractor Maintenance Support (CMS) for the F/A-18 aircraft, and/or the AH-64 Apache helicopter. The JVA was terminable by either party upon written notice to the other if "a notice of award with respect to the Program(s) [was] not received by the Company prior to 31 December, 2000" or "[t]he Contract(s) [were] determined finally to be awarded to a third party or parties on any basis."

The MDS proposal for F/A-18 CMS services was rejected by the U.S. Navy in March 2000. The Navy awarded the CMS contract to another contractor. MDS sent Al-Khaldiya a letter on June 5, 2000, terminating the JVA.

II.

This court reviews a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Hartford Fire Ins. Co. v. Clark*, 562 F.3d 943, 945 (8th Cir. 2009). The parties agree that this case is governed by Missouri law. Under Missouri law, summary judgment in a contract case is appropriate only where the contract language is so clear and unambiguous that the contract's meaning is readily apparent from the face of the document itself. *Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006).

Al-Khaldiya asserts that Boeing breached the 1996 agreement, by not paying it a commission for the Apache helicopter sale. Boeing counters that Article 3.3 of the agreement bars Al-Khaldiya's claim. Article 3.3 states:

> In the event this Agreement is discontinued by termination for convenience under ARTICLE 7 hereof prior to the end of the term of this Agreement or by expiration, Representative's right to receive commission payments, if any, which are agreed to by the parties as set forth in the Exhibit(s) hereto in connection with sales or leases of the Products pursuant to *orders accepted by MDC or MDISCO* within thirty (30) days after notice of termination is given, as provided in Articles 7 and 9, or within thirty (30) days after expiration shall not be affected, but thereafter Representative shall not under any circumstances be entitled to any commission for any *order received from any purchaser of the Products even if said order was procured through Representative's direct selling efforts*. MDISCO shall have no further financial obligations to Representative beyond the date of such termination or expiration. [emphasis added]

Al-Khaldiya argues that Article 3.3 pertains only to direct, non-FMS sales – not the Apache FMS sale. Al-Khaldiya relies on the following language in Article 3.3:

[1]     "orders accepted by MDC or MDISCO"
[2]     "order received from any purchaser . . . even if said order was procured through [Al-Khaldiya]'s direct selling efforts.

Al-Khaldiya says that the representation agreement's scope is limited to sales to purchasers in Kuwait. However, the purchaser of "orders accepted by MDC or MDISCO" in an FMS sale must be the U.S. government, and MDC and MDISCO cannot "accept" an FMS order from Kuwait. Al-Khaldiya interprets "direct selling efforts" to mean direct, non-FMS sales, so the purchaser of an order "procured

through [Al-Khaldiya]'s direct selling efforts" must be Kuwait. Al-Khaldiya argues, therefore, since the purchaser of the order in phrase [1] is not the same as the purchaser of the order in phrase [2], "order" is not given a consistent meaning throughout Article 3.3 *if* it is applied to the Apache FMS sale.

This court disagrees. Contract terms are read as a whole and given their plain, ordinary, and usual meaning. **Dunn Indus. Group, Inc. v. City of Sugar Creek**, 112 S.W.3d 421, 428 (Mo. banc 2003). The provision's plain language does not require the purchaser in phrase [2] to be the government of Kuwait. The provision applies to "any purchaser." The "direct selling efforts" language does not limit the provision to non-FMS sales. Further, Article 3.3 adopts the agreement's Exhibits. All versions of Exhibit A provide for commissions on FMS sales. Therefore, Article 3.3 bars Al-Khaldiya's claim to a commission for the FMS sale of Apache helicopters.

Al-Khaldiya invokes *Mathews v. Knoll Assoc., Inc.*, 388 S.W.2d 529, 533 (Mo. Ct. App. 1965) as a similar case that rejected the argument that a contract's sunset provision defeated a saleswoman's claim for commissions. There, the court found that the sunset provision did not bar commissions on sales made before (but shipped after) the termination of the contract. *Id.* Here, the Apache sale was not made until after termination of the 1996 agreement, so *Mathews* is inapposite.

Al-Khaldiya claims that its A-4 aircraft claim is not time-barred because Boeing timely renewed its promise to pay Al-Khaldiya for its efforts. According to Exhibit A of the 1996 agreement, a success fee for A-4 services was payable within 30 days after the successful sale and transfer of A-4's from Kuwait to a party other than Boeing. Missouri has a five-year statute of limitations period for breach-of-contract claims. **Mo. Rev. Stat. § 516.120**. The five-year period commences when the damage resulting from the breach is sustained and capable of ascertainment. **Mo. Rev. Stat. § 516.100**. Al-Khaldiya's claim was capable of ascertainment 30 days after the A-4 transfer in April 1998. True, a written "acknowledgment or promise" restarts the statute of limitations period. **Mo. Rev. Stat. § 516.320**. As evidence of a promise

or acknowledgment of the debt by Boeing, Al-Khaldiya references an internal e-mail from 1999 and draft renewal documents from 2000. However, the inclusion of the A-4 provision in the renewal agreement was subject to Boeing's approval (as was the entire renewal agreement) – which was not obtained, as clear from the face of the documents. Therefore, the statute of limitations expired in 2003. Al-Khaldiya's 2005 complaint was untimely.

Al-Khaldiya proffers that Boeing breached the implied covenant of good faith and fair dealing by representing that the 1998 agreement would be renewed, while simultaneously seeking a new representative in Kuwait. There is no breach of the implied covenant of good faith and fair dealing where the contract expressly permits the actions being challenged. *Bishop v. Shelter Mut. Ins. Co.*, 129 S.W.3d 500, 505 (Mo. Ct. App. 2004). The 1998 agreement allowed for non-renewal, and Boeing was under no obligation to renew. Boeing did not breach the implied covenant of good faith and fair dealing.

Next, Al-Khaldiya advances that it is entitled to a commission for the 2002 Apache sale under quantum meruit and unjust enrichment theories. Express terms of an unambiguous agreement preclude quantum meruit and unjust enrichment claims. *Holland v. Tandem Computers Inc.*, 49 F.3d 1287, 1289 (8th Cir. 1995). Al-Khaldiya relies on *Boyd v. Morgolin,* 421 S.W.2d 761, 768 (Mo. 1967) for the proposition that express terms of a contract do not preclude recovery on quantum meruit claims. There, the (successful) implied-contract claim was separate and distinct from the express contract claim, and not barred by the express terms of the contract. *Id.* Here, the 1996 agreement expressly bars compensation for an order accepted more than 30 days after termination or expiration of the contract term on January 21, 1998. The 1998 agreement expressly bars compensation for orders accepted after the effective date of termination or expiration, which was June 17,

2000. Al-Khaldiya's quantum meruit and unjust enrichment claims are precluded by the unambiguous, express terms of the representation agreements.[2]

Al-Khaldiya submits that MDS breached the JVA by its premature termination on June 5, 2000. The JVA was terminable by either party if "a notice of award with respect to the Program(s) is not received by the Company prior to 31 December, 2000" or "[t]he Contract(s) are determined finally to be awarded to a third party or parties on any basis." The "programs" covered by the JVA were CMS for the F/A-18 aircraft, and CMS for the AH-64 Apache helicopter. It is undisputed that under the JVA, termination was proper only if MDS had not been awarded *both* of the CMS contracts by the end of 2000. Although MDS may have terminated the contract prematurely (before December 31, 2000), a contract breach that causes no loss to the plaintiff will not support a judgment. *Rice v. West End Motors Co.*, 905 S.W.2d 541, 542 (Mo. Ct. App. 1995). Summary judgment is appropriate where there is no evidence that the plaintiff was damaged by a breach of contract. *Hospital Products, Inc. v. Sterile Design, Inc.*, 734 F.Supp. 896, 906-08 (E.D. Mo. 1990), *aff'd* 923 F.2d 859 (8th Cir. 1990) (unpublished table decision). The termination letter was sent after the F/A-18 CMS contract had been awarded to another contractor. Kuwait did not purchase Apache helicopters until 2002. Therefore, no Apache CMS contract could have been awarded before the end of 2000. There is no evidence that Al-Khaldiya was damaged by premature termination of the JVA.

III.

The judgment of the district court is affirmed.

_____

_____

[2] Al-Khaldiya argues that only MDISCO can assert the express terms of the agreement as a defense to the quantum meruit and unjust enrichment counts. Because the representation agreements repeatedly give MDC the same rights and duties as MDISCO (and allow MDISCO to assign them to any MDC-controlled corporation), this argument is meritless.