

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| LISA ARMBRUSTER, | ) | ED102123 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 11SL-CC03016 |
| | ) | |
| MERCY MEDICAL GROUP, | ) | Honorable Tom W. DePriest, Jr. |
| | ) | |
| Appellant. | ) | Filed: May 12, 2015 |

## Introduction

Mercy Medical Group (Mercy) appeals the summary judgment entered in favor of Dr. Lisa Armbruster (Armbruster) on her breach of contract claim. Mercy argues the trial court erred in its interpretation of the employment contract at issue. We affirm.

## Background

Armbruster worked as a physician for Mercy from August 1, 2003, until she voluntarily terminated her employment effective November 30, 2010. Armbruster and Mercy entered a physician services contract (the Contract) governing her employment. Section 4.1 of the Contract governed compensation, and it provided that "[Armbruster] shall be compensated . . . in consideration of providing services hereunder and for agreeing to the non-compete restrictions . . . ." Exhibit A of the Contract described

Armbruster's compensation. It referred to Mercy's productivity compensation model, which was the method Mercy employed for computing a physician's compensation based on several factors. At the time Armbruster terminated her employment with Mercy, Section III of Exhibit A governed her compensation:

> [Armbruster]'s compensation after the third (3rd) year of this Agreement shall be equal to [Armbruster]'s actual performance as determined by the [Mercy] productivity compensation model.

Though the productivity compensation model was not attached to the Contract, the parties agree that a document entitled "Physician Compensation Model" (PCM) contained the compensation method referred to in Exhibit A. The PCM included three components that make up a physician's salary: base compensation, additional compensation, and incentive compensation. Only the base compensation component is relevant here. Base compensation began with "collections," a term that is not defined in the PCM. Collections would first be reduced by three percent, and then "practice expenses" would be subtracted from that amount. The difference would be the physician's base compensation.

On July 27, 2011, Armbruster filed a petition against Mercy bringing claims of breach of contract and unjust enrichment. She alleged that Mercy failed to compensate her in accordance with the PCM for revenues she generated during her employment but that Mercy collected after November 30, 2010, the last date of her employment. Essentially, she claimed she never received her portion of "collections" that came from patients she treated, but whose bills were not paid until after her last day of work.

2

Both parties subsequently filed motions for summary judgment. The trial court granted Armbruster's motion for summary judgment on her breach of contract claim. The court found that the receipt of collections always trails the rendition of a physician's services, and that the PCM did not limit the term "collections" to only those monies collected before a physician's last day of employment. The trial court concluded the Contract unambiguously entitled Armbruster to compensation for services she rendered while employed with Mercy, but for which payment was not received until after November 30, 2010. The trial court found that Mercy owed Armbruster past-due compensation and interest in the amount of $33,995.64 on Armbruster's breach of contract claim. The trial court dismissed Armbruster's claim of unjust enrichment as moot. This appeal follows.

## Standard of Review

Our review of summary judgment is essentially *de novo*. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). We uphold the summary judgment if (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. Id. We view the facts and supporting affidavits in the light most favorable to the non-movant, and we accord the non-movant the benefit of all reasonable inferences from the record. Id. Contract interpretation is a question of law we review *de novo*. Topps v. City of Country Club Hills, 272 S.W.3d 409, 416 (Mo. App. E.D. 2008).

3

Discussion

Mercy raises four points on appeal. Points I and II dispute the trial court's ruling on Armbruster's breach of contract claim, and Points III and IV discuss unjust enrichment. We address the points related to each claim in turn.

Breach of Contract

Mercy argues in its first two points that the trial court erred in determining the Contract unambiguously entitles Armbruster to payment for collections Mercy received after the termination of Armbruster's employment. Mercy also argues to the extent the trial court found the Contract's language ambiguous, the court erred in construing the language against Mercy as the drafter. We disagree.

In order to succeed on her claim of breach of contract, Armbruster had to demonstrate four elements: (1) the existence and terms of an agreement; (2) that Armbruster performed pursuant to the agreement; (3) that Mercy breached the agreement; and (4) that Armbruster suffered damages as a result. See Keveny v. Mo. Military Academy, 304 S.W.3d 98, 104 (Mo. banc 2010). Mercy asserts Armbruster failed to establish that Mercy breached the PCM,[1] because the term "collections" construed with the rest of the Contract unambiguously referred only to collections received during Armbruster's employment.

"The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." Burrus v. HBE Corp., 211 S.W.3d 613, 616-17 (Mo. App. E.D. 2006) (quoting J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,

---

[1] The parties agree that the PCM is part of the Contract by incorporation and treat it as such. See Dunn Indus. Gr., Inc. v. City of Sugar Creek, 112 S.W.3d 421, 435 n.5 (Mo. banc 2003) (matters incorporated by reference "are as much a part of the contract as if they had been set out in the contract *in haec verba*"). Thus, we also consider it part of the Contract without determining whether the specific language of the Contract was sufficient to incorporate the PCM by reference.

4

491 S.W.2d 261, 264 (Mo. banc 1973)). In determining the intent of the parties, we read the contract as a whole and give the terms their pain, ordinary, and usual meaning. State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 859 (Mo. banc 2006). If the terms are unambiguous, then we glean the parties' intent solely from the terms of the contract. Id. However, if the terms of the contract are ambiguous, we "may resort to extrinsic evidence to resolve [the] ambiguity." Burrus, 211 S.W.3d at 617. An ambiguity exists not simply when the parties disagree over the contract's interpretation, but where the contract is "reasonably susceptible to different constructions." Id. (internal alterations omitted). "Furthermore, each term of a contract is construed to avoid rendering other terms meaningless." Schneider, 194 S.W.3d at 860.

First, Section 4.1 of the Contract makes clear that the parties intended Mercy would compensate Armbruster "in consideration of providing services hereunder and for agreement to the non-competition restrictions in [the Contract]." While the parties dispute the meaning of the term "collections," that term appears in the PCM, which outlines the method for computing the *amount* of Armbruster's compensation. There is no dispute that the parties intended in section 4.1 that Mercy would compensate Armbruster for services she provided under the Contract. It is this provision that informs the interpretation of the parties' agreement as it relates to compensation.

Regarding the PCM, the parties disagree about the meaning of the term "collections," which is the starting point for Armbruster's base salary. Armbruster argues, as the trial court found, that the term "collections" is not limited in time, and thus any collections Mercy received at any time from services Armbruster provided should be put into the PCM's formula and the result remitted to Armbruster. In contrast, Mercy

5

argues that in light of the whole Contract, and in absence of any express term guaranteeing Armbruster payment of any part of collections received after her termination date, it is clear that "collections" unambiguously signifies only those collections received during the term of Armbruster's employment.

Mercy highlights two other sections of the Contract to support its argument. First, Section 2.4 states in part, "[Mercy] shall bill for all of the services provided by [Armbruster] in the Practice under this Agreement, and [Mercy] shall retain all revenues received from such billings." Mercy argues this means that Armbruster had no entitlement to any revenues Mercy collected after Armbruster's employment ended. Thus, Mercy concludes that "collections" cannot include anything collected after that date.

However, nowhere does the Contract indicate that the terms "revenue" and "collections" are synonymous. Rather, section 2.4 deals with who receives revenue from patients, and the PCM deals with the amount of compensation Mercy owes Armbruster for her services. Reading them together, it is clear that Mercy in the first place has the right to receive all revenues from patients, and then Mercy is separately obligated to compensate its employees, regardless of the source of funds for that compensation. The fact that the amount of a physician's compensation under the PCM in part reflects the amount of money collected from his or her patients does not mean Mercy may avoid its obligation to pay physicians based on section 2.4's statement that Mercy retains all revenues.

Mercy further argues that if we read "collections" as including monies collected after a physician's termination, section 2.4 is rendered meaningless, because such a

reading creates a direct right of the physician to receive revenues. However, as stated above, the use of the term "collections" in the PCM is a way of determining the starting value for calculating the base compensation Mercy must pay to Armbruster, after Mercy has collected all of its revenues. Reading it as allowing Armbruster to be compensated consistently with the value of the collections received after her term of employment ended does not create a right on the part of Armbruster to directly receive any revenues. Thus, we see nothing in Section 2.4 mandating Mercy's reading of the term "collections."

Next, Mercy points to section 6.8 of the Contract, entitled "Obligations Upon Termination":

> Within thirty (30) days after the termination of this Agreement
> . . ., [Mercy] shall pay to [Armbruster] . . . the compensation
> and benefits which are vested and would otherwise be payable
> to [Armbruster] in accordance with this Agreement and the
> [Mercy] policies up to and including the effective date of
> termination. Neither party shall have any further obligation . . .
> except for (i) obligations accruing prior to the date of
> termination; and (ii) obligations, promises or covenants in this
> Agreement which are expressly intended to extend beyond the
> term of this Agreement . . . .

As relevant here, this section expressly limits Mercy's obligations to (1) payment of compensation vested up to the date of termination, and (2) any obligations accruing prior to the date of termination. Mercy argues that monies received after Armbruster's employment ended fall in neither of these categories, and therefore "collections" cannot be read to create an obligation that is not in this section.

Specifically, Mercy argues that because the PCM's base salary is grounded in "collections," the physician's right to compensation does not vest until payment for services is collected. While this may be a reasonable construction considering only the PCM, we must consider it in light of the Contract's general promise regarding

7

compensation in section 4.1, which provided that "[Armbruster] shall be compensated . . . in consideration of providing services hereunder . . . ." This indicates that once Armbruster performs under the Contract by providing services, Mercy must perform by compensating her for those services. The only reasonable construction is that her right to compensation vests when she provides services. See Brown v. Brown, 848 S.W.2d 551, 552 (Mo. App. E.D. 1993) (we will reject unreasonable interpretation "in favor of a probable and reasonable construction"). Withholding payment for services Armbruster rendered, simply because patients or their respective insurance companies did not pay their bills for those services before Armbruster's final day of work, undercuts the parties' agreement in section 4.1.

Such a conclusion does not mean that Armbruster's compensation is unaffected by collections. On the contrary, under the PCM, the amount of compensation she receives is dependent in part on the amount of collections Mercy receives, and if Mercy is unable to collect fully, the amount of Armbruster's compensation will decrease accordingly. However, it is unreasonable to conclude that Armbruster's right to compensation at all does not arise until Mercy collects money from the patients Armbruster serves.

This being the case, then under section 6.8, compensation to Armbruster for services rendered but for which no payment has been collected is an obligation "accruing prior to the date of termination," and thus extends beyond the 30-day time limit in that section. Additionally, to place a narrow timeliness limitation on the word "collections" where none exists in the Contract is unreasonable. See Dwyer v. Unit Power, Inc., 965 S.W.2d 301, 307 (Mo. App. E.D. 1998). As such, reading all the foregoing sections of

8

the Contract and the PCM together, the unambiguous language requires Mercy to pay Armbruster for services she rendered to the extent Mercy collects for those services, even if Mercy does not receive those collections until after 30 days following Armbruster's last date of employment.

Thus, Armbruster showed that Mercy breached the terms of the Contract entitling her to compensation for services rendered in the amount determined by the PCM after collections for her services are received by Mercy. The trial court did not err in granting Armbruster's motion for summary judgment on this claim. Points I and II denied.

## Points III and IV

Mercy argues in Points III and IV that the trial court erred in denying Mercy's motion for summary judgment on Armbruster's claim of unjust enrichment. The denial of a motion for summary judgment is not a final, appealable order. Cook's Fabrication & Welding, Inc. v. Mid-Continent Cas. Co., 364 S.W.3d 639, 646 (Mo. App. E.D. 2012). Moreover, the trial court did not find in Armbruster's favor on her unjust enrichment claim, but dismissed it as moot because it was an alternative claim to Armbruster's breach of contract claim. The trial court did not err in doing so. See Lowe v. Hill, 430 S.W.3d 346, 349 (Mo. App. W.D. 2014) ("a plaintiff cannot recover under an equitable theory when she has entered into an express contract for the very subject matter for which she seeks to recover"). Points III and IV denied.

## Conclusion

The Contract provided that Mercy would compensate Armbruster for her services. Additionally, the collection of payment for a physician's services often takes place after the physician renders those services. Given this, reading "collections" as corresponding

9

only to the amount collected as of the last date of Armbruster's employment is unreasonable in that it would leave Armbruster uncompensated for services she performed but for which payment was not yet collected by the last day of her employment. Thus, the trial court did not err in granting Armbruster's motion for summary judgment on her breach of contract claim. As a result, the trial court also did not err in dismissing her claim of unjust enrichment, which was to recover damages for the same subject matter, as moot. We affirm.

_____
Gary M. Gaertner, Jr., Judge

Kurt S. Odenwald, P. J., concurs.
Robert G. Dowd, Jr., J., concurs.

10